Gregory L. HAWTHORNE, Plaintiff,

v.

CITICORP DATA SYSTEMS, INC. dba
Citibank of D.C., Defendant.

No. 01–CV–5582(NGG)(LB).

United States District Court,
E.D. New York.

June 27, 2002.

Gregory L. Hawthorne, Brooklyn, NY,
pro se.

Conrad W. Lower, Brooklyn, NY, for plaintiff.

Robert P. Knapp, III, Mulholland & Knapp III, New York, NY, for defendant.

## MEMORANDUM & ORDER

GARAUFIS, District Judge.

*Pro se* Plaintiff, Gregory L. Hawthorne, filed suit against Defendant, Citicorp Data Systems ("Citibank"), alleging that Citibank violated Section 623(b) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s–2 (1998), and consequently is liable for damages to Plaintiff. Plaintiff now moves this court, pursuant to Fed.R.Civ.P. 55(b), for an entry of default judgment and damages against Defendant. For the reasons discussed below, Plaintiff's motion for a default judgment is GRANTED and the case is referred to Magistrate Judge Lois Bloom to conduct a hearing on the actual or statutory, and punitive damages to be awarded to Plaintiff.

## I. Factual and Procedural Background

The following facts are based on the allegations in Plaintiff's complaint, which are undisputed. In 1994, Plaintiff opened a checking account at a Washington, D.C. branch of Citibank. Three years later, Plaintiff withdrew all funds from his Citibank account before moving from Washington, D.C. to New York City. In December 1997, Citibank sent Plaintiff an invoice alleging an overdraft balance of $2,600 on his Washington, D.C. account. After comparing his records with the Citibank charges, Plaintiff discovered that he owed less than claimed by Citibank. Plaintiff wrote to Citibank on May 8, 1998, detailing the discrepancies and enclosing a check for the amount that his records indicated was owed. Citibank did not respond to Hawthorn's claim of a discrepancy. Instead, Citibank sent numerous computer-generated letters to Plaintiff demanding payment and at various times threatening either

"collection action", legal action, or referral of the matter to a credit reporting bureau. Plaintiff tried numerous times, by phone and by letter, to explain to Citibank the nature of his dispute. Citibank neither cleared up the matter over the phone nor indicated in any letter to Plaintiff that it acknowledged that a discrepancy might exist.

On January 17, 2001, Plaintiff purchased his credit report from Experion, a leading credit reporting bureau. The credit report included an entry from Citibank indicating that Plaintiff was more than 60 days in arrears. On February 14, 2001, Plaintiff wrote to three of the largest credit reporting agencies (Experion, Trans Union and Equifax) disputing Citibank's report against his account. On February 26, 2001, Plaintiff received a letter from a Director of Executive Communications at Citibank, his first non-form letter, indicating that Citibank could not find any discrepancies in his account, that Plaintiff currently owed a balance of $2,167.97, and that Citibank may not be able to resolve disputes over statements that are three or four years old.

In April 2001, Plaintiff began seeking a home mortgage loan. Only one lender offered Plaintiff a loan, and four days before closing, the lender demanded an additional .875 percent on the interest rate. Plaintiff alleges that the lack of lending options and the lender's last minute interest rate hike resulted from Citibank's report to the credit reporting agencies that Plaintiff was a "bad debt." Further, Plaintiff alleges that the difficulty he had in obtaining a mortgage serves as evidence that the Citibank discrepancy is continuing to have a negative, ongoing effect on Plaintiff's credit.

Based on the above facts, Plaintiff initiated this action, claiming that Citibank willfully failed to conduct a legitimate in-

vestigation upon notice of Plaintiff's dispute, and therefore Citibank is liable to Plaintiff pursuant to 15 U.S.C. § 1681n.

On September 13, 2001, Plaintiff served Citibank with his complaint. On April 11, 2002, the Clerk of the Court noted, pursuant to Rule 55(a), Citibank's default for failure to file an answer or otherwise move with respect to the complaint. By failing to respond to Plaintiff's complaint, Citibank has admitted the specific facts alleged in the complaint, including that it did not conduct a legitimate investigation upon notice of Plaintiff's dispute and that its conduct was willful. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir.1992) (noting well established rule that "a party's default is deemed to constitute a concession of all well pleaded allegations of liability").

## II. Discussion

### A. Legal Rights and Remedies Under the FCRA

In 1970, Congress enacted the FCRA (alternatively the "Act") to promote "efficiency in the Nation's banking system and to protect consumer privacy." *TRW, Inc. v. Andrews*, 534 U.S. 19, 122 S.Ct. 441, 444, 151 L.Ed.2d 339 (2001) (citing 15 U.S.C. § 1681(a) (1994)). Towards these ends, the FCRA establishes the responsibilities and rights of consumers, furnishers of credit information, credit reporting agencies ("CRAs"), and users of credit information. *See* 15 U.S.C. § 1681(b) (setting forth purposes of the Act); § 1681n (setting forth consumer remedies under the Act); § 1681s–2 (setting forth duties of furnishers of information).

The substantive provision of the Act at issue in this case, § 1681s–2(b), is one which imposes duties upon furnishers of credit information, such as Defendant Citibank. Section 1681s–2(b) is entitled "Duties of furnishers of information upon notice of dispute" and mandates:

> After receiving notice pursuant to section 1681i(a)(2) [1] of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency; and
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

15 U.S.C. § 1681s–2(b).

The FCRA also creates a private right of action, by which consumers may bring suit for damages against, "any person" who violates or fails to comply with "any requirement imposed" under Section 1681. *See* 15 U.S.C. §§ 1681n and 1681o; *see also TRW Inc.*, 122 S.Ct. at 444–45. As defined at § 1681a, the term "person" means "any individual, partnership, corpo-

---

1. Section 1681i(a)(2) provides in relevant part that when "a consumer reporting agency receives notice of a dispute from any consumer ..., the agency shall provide notification of the dispute to any person who provided any item of information in dispute...." 15 U.S.C. § 1681i(a)(2)(A). It further provides that,

"[t]he consumer reporting agency shall promptly provide to the person who provided the information in dispute all relevant information regarding the dispute that is received by the agency from the consumer ...." 15 U.S.C. § 1681i(a)(2)(B).

ration, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b). Given the expansive definition of "person" and the private cause of action created by the Act, the plain language of the Act apparently allows a consumer, such as Plaintiff, to sue a furnisher of information, such as Defendant Citibank, for damages.

## B. Case Law Interpreting Private Causes of Action Under § 1681n

The language of the Act, which creates a cause of action against "any person," reflects an amendment made to the Act in 1996. Prior to 1996, Sections 1681n and 1681o contained more specific language, imposing liability on "[a]ny consumer reporting agency or user of information". *See* Pub.L. 104–208 at § 2412; 110 Stat. 3009 at § 2412 (1996) (amending language in §§ 1681n and 1681o from "any consumer reporting agency or user of information" to "any person"). By changing the language in both sections to impose liability on "any person", the 1996 amendment appears to have clearly expanded the scope of liability under the Act. Thus, as discussed above, the Act seems to provide consumers with a private right of action against a furnisher of information. This court notes, however, that the right to bring a § 1681n cause of action against furnishers of information, subsequent to the 1996 amendment, has not yet been recognized by a decision of this Circuit.

Other Circuits, however, have addressed the issue of whether a consumer can sue a furnisher of information as a result of the 1996 amendment to § 1681n. Most on point is the Ninth Circuit's recent decision in *Nelson v. Chase Manhattan Mortgage*

*Corp.*, 282 F.3d 1057 (9th Cir.2002). The Ninth Circuit held that a consumer does have a private cause of action against a furnisher of information because: (1) the structure of the statute provides such a right [2]; (2) the 1996 congressional amendments to Section 1681n do not seem to serve any purpose other than to expand a consumer's right to bring actions against furnishers of credit information since the old language already allowed consumers to bring actions against CRAs and users of credit information; and (3) providing "some private remedy to injured consumers, coheres with what we see as a primary purpose for the FCRA, to protect consumers against inaccurate and incomplete credit reporting." *Id.* at 1060. The Ninth Circuit also noted that "[t]he statute has been drawn with extreme care, reflecting the tug of the competing interests of consumers, CRAs, furnishers of credit information, and users of credit information. It is not for a court to remake the balance struck by Congress, or to introduce limitations on an express right of action where no limitation has been written by the legislature." *Id.* Thus, relying squarely on the statutory language, the Ninth Circuit has recognized a consumer's statutory right to initiate a private cause of action against a furnisher of information who violates § 1681s–2(b).

In addition, the Fifth Circuit recently discussed the provisions of the FCRA at issue here, and although it did not ultimately decide the issue, it noted that the FCRA, as amended, appears to impose civil liability on furnishers of information. The Fifth Circuit explained:

> 15 U.S.C. § § 1681n and 1681o impose civil liability on 'any person' violating

---

**2.** In its analysis, the Ninth Circuit also noted that although Section 1681s–2(c) expressly bars the private cause of action created in Section 1681n from applying to Section

1681s–2(a), it does not bar application of Section 1681n to Section 1681s–2(b). *See Nelson*, 282 F.3d at 1059–60.

duties under FCRA. Section 1681s–2(b) imposes duties on furnishers of information to, *inter alia*, investigate disputed information and report the results of any such investigation to the consumer reporting agency. The plain language of FCRA thus appears to impose civil liability on 'any person' violating a FCRA duty unless some exception applies. Section 1681s–2(c) does provide an exception to civil liability for failure to comply with Section 1681s–2(a) .... Nothing in these sections precludes a private right of action for violation of the investigation and reporting requirements of Section 1681s–2(b).

*Young v. Equifax Credit Info. Servs., Inc.,* No. 00–31254, 2002 WL 1277584, at *7 (5th Cir. June 11, 2002) (internal citations omitted). The court, however, declined to rule on whether the plaintiff could bring a private right of action against a furnisher of information because the plaintiff had failed to establish that the particular furnisher of information in that case was in fact aware of the dispute. Thus, the plaintiff could not prove that the furnisher of information's duty to investigate had been triggered. *See id.* Further, the Fifth Circuit expressly chose not to approve or disapprove of the *Nelson* holding. *Id.* Nonetheless, the Fifth Circuit's discussion of the Act's plain language, as quoted above, tends to support the analysis and conclusions reached by the Ninth Circuit.

Notably, a district court decision from this Circuit, although decided prior to *Nelson,* similarly found a private right of action under § 1681n for damages suffered as a result of violations of § 1681s–2(b). In *McMillan v. Experian Info. Servs.,* 119 F.Supp.2d 84 (D.Conn.2000), Judge Arterton held that "the plain language of Section 1681n and Section 1681o when read in conjunction with Section 1681s–2, expressly provides a consumer remedy for violation by a furnisher of credit information of the obligations imposed under 15 U.S.C.

§ 1681s–2(b)." *Id.* at 89. In reaching this decision, the district court noted that three other district courts outside of this Circuit had reached the same conclusion. *Id.* at 86 (citing *Dornhecker v. Ameritech Corp.,* 99 F.Supp.2d 918 (N.D.Ill.2000); *DiMezza v. First USA Bank, Inc.,* 103 F.Supp.2d 1296 (D.N.M.2000); *Campbell v. Baldwin,* 90 F.Supp.2d 754 (E.D.Tex.2000)). Further, while grounding its holding on the clear statutory language of the Act, the *McMillan* court also observed that "both the legislative history and the Federal Trade Commission's interpretation reflecting the intent that consumers can pursue a civil action against furnishers of information for violations of 15 U.S.C. § 1681s–2(b)" were consistent with its finding that a private cause of action exists. *Id.* at 88–89 (citing Minority Report from House Banking Committee on Banking, Finance and Urban Affairs and Letter from Clarke W. Brinkerhoff, Attorney with Division of Financial Practices Division of the Federal Trade Commission).

Finally, I note that there is one Second Circuit case, *Northrop v. Hoffman,* 134 F.3d 41 (2d Cir.1997), decided after the enactment of the 1996 amendments, but prior to their taking effect, in which the Court discussed in dicta the possible congressional intent in amending § 1681n to cover "any person." In *Northrop,* the Court noted that:

[t]he amended version of § 1681n ... replaced the reference to 'any consumer reporting agency or user of information' with 'any person' .... It is unclear what conclusions we can draw from these amendments with respect to the meaning of 'user' in the pre-amended version of the statute. On the one hand, it might be argued that the amendments reflect Congress's intent to expand the FCRA beyond its initial scope and to permit it to apply to previously excluded defendants.... It might just as easily

be argued, however, that these amendments were intended simply to clarify that Congress never intended to employ 'users' in ... § 1681n as a restrictive term.

*Id.* at 48 n. 9. Under either of the possible interpretations suggested by the Second Circuit, the civil liability created by § 1681n is interpreted broadly rather than narrowly. This statutory analysis, though speculative, indicates that it would be appropriate to interpret the new language, which explicitly broadens the category of defendants, as have the Ninth Circuit and the District of Connecticut, to expand the scope of liability to include furnishers of information.

■ Relying on the clear and unambiguous statutory language of the Act, and also considering the Act's purpose—to protect the rights of consumers—and the absence of any controlling law from this Circuit, I am persuaded by the analysis and holding of the Ninth Circuit decision in *Nelson,* as well as that of the District of Connecticut in *McMillan.* Accordingly, I find that pursuant to Section 1681n and Section 1681s–2(b) of the FCRA, consumers have a private right of action against furnishers of information who fail to comply with the requirements of Section 1681s–2(b).

## C.  Defendant is Liable to Plaintiff under § 1681n

■ On February 14, 2001, Plaintiff notified three of the largest CRAs (Experion, Trans Union and Equifax) of a dispute regarding his credit information as furnished by Citibank. A series of correspondence, starting with a letter from Citibank, dated February 26, 2001, indicates that Citibank was aware of Plaintiff's dispute regarding information furnished by Citi-

bank to CRAs. Moreover, in failing to answer the complaint, Citibank has admitted its willful failure to investigate upon notice of the dispute as required by Section 1681s–2(b).

As discussed above, Plaintiff may bring a private cause of action, pursuant to Section 1681n, against Citibank, a furnisher of information, for willfully failing to comply with its duties to Plaintiff under Section 1681s–2(b). Further, I find that the allegations and facts set forth in Plaintiff's complaint are sufficient to establish a cause of action under these provisions, and that Defendant has admitted these facts, and its liability.[3]  *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 108 (2d Cir.1997) ("It is, of course, ancient learning that a default judgment deems all the well-pleaded allegations in the pleadings to be admitted."). Therefore, Citibank is subject to the civil penalties provided under Section 1681n.

## D.  Damages to be Awarded Plaintiff

Based on Defendant's liability to Plaintiff for a willful violation of the Act, Plaintiff may recover actual damages caused by the violation, or alternatively statutory damages of up to $1,000, punitive damages, costs and reasonable attorney's fees. *See* 15 U.S.C. § 1681n(a); *TRW Inc.,* 122 S.Ct. at 444–45. Plaintiff seeks actual damages, punitive damages, attorney's fees, and costs totaling over $800,000.

■ First, I note that Plaintiff did not hire an attorney; rather, he prosecuted his case *pro se,* and seeks to recover attorney's fees for his own time. Numerous cases, including decisions of the Supreme Court and this Circuit have repeatedly

---

**3.** Thus, unlike the facts underlying the decision in *Equifax Credit Info. Servs., Inc.,* 2002 WL 1277584, here, Plaintiff has established each of the elements necessary to state a cause of action for a violation of Section 1681s–2(b), and is thus entitled to relief under the Act.

held that *pro se* litigants, even those who are attorneys, are not entitled to attorney's fees for litigating a case on their own behalf. *See Kay v. Ehrler*, 499 U.S. 432, 435–37, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991) (holding *pro se* attorney not entitled to attorney's fees under § 1988); *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 694–95 (2d Cir.1998) (holding *pro se* attorney not entitled to attorney's fees under Title VII); *see also Texaco Inc. Shareholder Derivative Litigation*, 123 F.Supp.2d 169, (S.D.N.Y.2000) (citing line of cases in Second Circuit denying *pro se* attorneys fee awards).' Thus, while Plaintiff may have expended significant time on prosecuting his own case, and has done so with skill, he is not entitled to an award of attorney's fees for his own time. Plaintiff is, however, entitled to recover any actual costs he incurred in prosecuting the case. With respect to such costs, as well as the actual and punitive damages sought by Plaintiff, a hearing is necessary to establish the appropriate amount of damages to be awarded. *See* FED.R.CIV.P. 55(b)(2). Although Defendant has admitted liability by virtue of its default, it is not deemed to have admitted damages and is entitled to an opportunity to contest the specific amounts claimed by Plaintiff. *See Greyhound*, 973 F.2d at 158. Moreover, Plaintiff seeks certain compensatory and punitive damages, which are not susceptible of exact mathematical calculation and cannot be appropriately determined without some type of evidentiary hearing. *See id.; Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir.1974). Accordingly, it is necessary to hold a hearing before determining an appropriate award of damages in this case

### III. Conclusion

For the foregoing reasons, it is hereby ORDERED that a default judgment of liability against Defendant for costs, actual or statutory damages, and punitive damages to be awarded to Plaintiff is entered for Defendant's willful violation of its duties to Plaintiff under 15 U.S.C. § 1681s–2(b). It is further ORDERED, that this case is referred to Magistrate Judge Lois Bloom to conduct a hearing to determine the appropriate amount of such damages and to issue a Report and Recommendation.

SO ORDERED.