Gregory HAWTHORNE, Plaintiff,

v.

CITICORP DATA SYSTEMS, INC., dba Citibank of DC, Defendants.

No. 01–CV–5582(NGG)(LB).

United States District Court, E.D. New York.

Dec. 1, 2003.

Gregory L. Hawthorne, pro se.

Conrad W. Lower, Attorney at Law, Brooklyn, NY, for Plaintiff.

Robert P. Knapp, III, Mulholland & Knapp III, New York City, for Defendant.

## MEMORANDUM AND ORDER

GARAUFIS, District Judge.

Defendant Citicorp Data Systems, Inc. ("CDSI") has moved to vacate a default judgment entered against it under the Fair Credit Reporting Act ("FCRA") in favor of Plaintiff Gregory Hawthorne ("Hawthorne") on June 27, 2002. CDSI has simultaneously moved to dismiss Hawthorne's complaint on various grounds. For the reasons set out below, CDSI's motion to vacate the default judgment is GRANTED, but its motion to dismiss is DENIED.

### Factual Background

To summarize the alleged facts concerning the underlying dispute, in October of 1997 Hawthorne closed a checking account he held at Citibank, F.S.B. ("FSB") in Washington, DC. Compl. at ¶ 6. A dispute later arose over the amount Hawthorne owed the bank for debits to that account incurred after the account closed (which Hawthorne contended was less than the amount asserted by Citibank). *Id.* at ¶ 7. Hawthorne sent a letter, with documentation, to Citibank explaining why he owed less than Citibank claimed. He also sent a check for the amount he believed he owed, about $1,500, and which he noted was tendered in satisfaction of all debts to the bank. *Id.* at ¶ ¶ 10, 11. Citibank deposited the check in the spring of 1998 but a Citibank-related entity continued to send form letters to Hawthorne insisting that he continued to owe an additional amount, without addressing Hawthorne's argument that the $1,500 figure was correct. *Id.* at ¶ 11. Hawthorne attempted to dispute the form letters in communications with Citibank and alleges that Citibank's further attempt to collect, after depositing his check, tendered in full payment of his obligations, violated the laws of the District of Columbia. *Id.* at ¶ ¶ 11, 12. Starting in November of 2000 Hawthorne received a series of form letters from a Citibank-related entity threatening a "collection action" and other consequences if he did not pay off the debt. *Id.* at ¶ ¶ 17, 18. Hawthorne later discovered that the three major credit reporting bureaus had noted that Hawthorne was delinquent in his accounts with Citibank. *Id.* at ¶ ¶ 22, 24. In April of 2001 Hawthorne attempted to seek a home mortgage loan, and due to the negative credit reports he was restricted in the number of companies that offered him a loan. Hawthorne alleges that the interest rate he ultimately got was at least .875% higher than it would otherwise have been. *Id.* at ¶ ¶ 28, 29. The account is still listed negatively on Hawthorne's credit reports, still negatively

affecting his ability to obtain credit. *Id.* at ¶ 30. To redress the damages he allegedly suffered, in August of 2001 Hawthorne filed suit under 15 U.S.C. § 1681, the Fair Credit Reporting Act ("FCRA").

The alleged facts concerning service of the summons and complaint, the primary issue now before the court, are as follows: in the August of 2001 Hawthorne attempted to serve CDSI through an agent for service of process in Washington, CT Corporation System, but on August 29, 2001 CT wrote Hawthorne that CDSI had recently cancelled its subscription with CT. Plaintiff's Memorandum of Law in Opposition to Defendant's Motions to Vacate and Dismiss (Opp.Mem.) at 6. Hawthorne next directed Mr. Ken Margolis, an employee of Torri's Legal Services, to serve process on the Citibank branch office where the account was opened, on Vermont Avenue, NW in Washington. *Id.* Mr. Margolis swears that he served the summons and complaint at the bank branch on a person who identified herself as "Zar Wardak," the branch manager of the bank. Margolis Aff. at ¶ 6. He noted the woman's physical appearance on the proper form but did not get her signature. Exh. A to Opp. Mem. In the Return of Service section of the form Mr. Margolis declared, under penalty of perjury, that he personally served the summons and complaint on "Citibank of DC a/k/a Citibank F.S.B." Opp. Mem. at 7. Much of the confusion over service may fairly be attributed to the fact that CDSI is a separate corporate entity from Citibank F.S.B.; CDSI is apparently responsible for the collection of debts owed to entities like Citibank F.S.B., the actual corporate entity at which Hawthorne had a checking account.

Both CDSI and FSB deny ever having been served with process. Memorandum of Law in Support of Motion to Vacate Default Judgment and to Dismiss Complaint (("Supp. Mem.") at 5-6). They claim that they first learned of this action in early July of 2002, upon receiving by mail at the Citibank branch office in Washington an incomplete copy of this court's order approving the entry of a default judgment. Supp. Mem. at 3. Ms. Wardak, the person allegedly served at the bank branch, has sworn that she was out of the country on the date she supposedly accepted service, and CDSI has submitted a copy of the absence sheet for her Citibank branch from that day, which lists her as absent. Declaration of Zarlasht Wardak in support of Motion to Vacate Default Judgment and Dismiss Complaint ¶ ¶ 5, 6. On October 1, 2002 CDSI filed the instant motion to vacate the default judgment and dismiss the complaint.

## Discussion

### I. Motion to Vacate the Default Judgment

Defendant has moved under both Fed. R. Civ. Proc. 60(b)(3) and 60(b)(4) to vacate the default judgment. The Second Circuit has often stated its preference that "litigation disputes be resolved on the merits, not by default." *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir.1995). Therefore, any doubts to be resolved must be resolved in favor of the moving party. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir.1993).

### A. Service on CDSI was defective.

Fed. R. Civ. Proc. 60(b)(4) states that a judgment may be vacated if the "judgment is void," usually meaning that the court had no jurisdiction over the defendant when judgment issued. One common reason that a void judgment issues is because of defective service that fails to properly put a defendant on notice of the complaint against him. Without proper service a court has no personal jurisdiction over a defendant. *See American Inst. of Certified Pub. Accountants v. Affinity Card, Inc.*, 8 F.Supp.2d 372, 375 (S.D.N.Y.1998) ("[A] judgment obtained by way of defective service is void for lack of personal jurisdiction and must be set aside as a matter of law."). *See also Howard Johnson Intern., Inc. v. Wang*, 7 F.Supp.2d 336, 339 (S.D.N.Y.1998). Unlike with other Rule 60(b) motions, if a judgment is in fact void the court does not have discretion in deciding whether to vacate the default judgment. *See Silverman v. RTV Communications, Inc.*, 2002 WL 483421 (S.D.N.Y. March 28, 2002).

The default judgment at issue here must be vacated, because service was defective. Regardless of whether Ms. Wardak, or anyone else at the bank that day who would

have been properly authorized to accept service on behalf of FSB, did in fact accept service of the complaint on September 13, 2001, no one at the bank branch in Washington was an employee, agent, or otherwise authorized to accept service on behalf of CDSI. Thus, service could not have been proper on CDSI under either the laws of New York or the District of Columbia, both of which permit service on a corporation through its agents—but not through the agents of some other corporation. *See* CPLR § 311 and D.C.Code § 13–334. Therefore, service was not proper under Fed. R. Civ. Proc. 4(h). Rule 4(e)(1) has similar rules for service of process on a corporation, so service was not proper under that rule, either. Nor can defective service be ignored on the ground that CDSI had actual notice of the case against it; CDSI has sworn that it did not actually become aware of the action against it until after the default judgment was entered, and Hawthorne has submitted no evidence disproving CDSI's assertion.

### B. *Hawthorne may not enforce the default judgment against FSB*

█ Hawthorne now claims that he intended to sue FSB all along, rather than CDSI, and he properly served FSB through Wardak (or someone representing herself as Wardak). Therefore, Hawthorne argues, he should now be allowed to amend the caption of the case to substitute FSB for CDSI and collect on the default judgment against FSB. Opp. Mem. at 9. But again, even if Wardak (or a woman representing herself as Wardak) accepted Hawthorne's complaint default judgment must be vacated, because Hawthorne may not amend the caption of his complaint in this way.

█ It is an elementary component of due process that a defendant have notice of an action brought against it, and a defendant not named in the caption of a complaint has been deprived of an important component of that notice. The only significant exception to this rule is when there is indisputable proof of a mere "misnomer" problem; in other words, where it was clear both that the defendant facing judgment was the party the plaintiff did in fact intend to sue, and that the

defendant was actually aware of the complaint against it. While there may have been such "misnomer" in the unpublished Sixth Circuit case of *Triangle Distributing, Inc. v. Shafer, Inc.*, 1991 WL 164333 cited by Hawthorne, there are serious questions about whether Hawthorne actually intended to sue FSB and whether FSB should have been, let alone was, aware of a complaint against it. First, it is not entirely clear which of the two entities Hawthorne intended to sue at the time he served the complaint. The complaint lists as the defendant a banking corporation with a place of business in Washington (FSB) *and* a principal place of business in San Antonio (CDSI). Compl. at ¶ 4. Hawthorne most likely did not realize that he was dealing with two separate entities (as proven by the fact that he listed only one entity in the caption, albeit one with a dba). Second, had Wardak herself accepted service (which is of course a matter of serious dispute), she should not be expected to take responsibility for a complaint lodged against an entity by whom she was not employed, for whom she did not serve as an agent, and with which she was not familiar. The fact that CDSI would have been named in the caption with a "dba" of "Citibank of DC" is not sufficient, for the purposes of due process, to put Wardak, or any other employee at the bank branch that day, on notice of a lawsuit against FSB.

I am particularly hesitant to label what happened here a mere "misnomer" in light of the fact that it is a default judgment Hawthorne seeks to enforce against the new party. Further, while not exactly on point, the Supreme Court's decision in *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 120 S.Ct. 1579, 146 L.Ed.2d 530 (2000) strongly disfavors in principle adding a defendant, post-judgment, where the newly added defendant becomes immediately liable on the judgment without an opportunity to contest liability. I also do not believe that an evidentiary hearing would assist the court in this case—the record already contains a thorough account of each party's assertions concerning service, and, as explained above, I would find that the judgment should be vacated even if Hawthorne's allegations about service were all true. For all of these reasons I find that this court never obtained personal jurisdiction

over either CDSI or FSB, and the default judgment must be vacated. Because I grant Defendant's motion under Rule 60(b)(4), I do not need to address Defendant's arguments concerning Rule 60(b)(3).

## II.  The Motion to Dismiss the Complaint

Even though Hawthorne may not amend the caption in order to collect on the default judgment, he is granted leave to amend the caption and recommence his lawsuit against both CDSI and FSB. In contrast to the way doubts are solved in favor of the moving party on a motion to vacate a default judgment, all doubts are resolved in favor of the non-moving party on a motion to dismiss. *See, e.g., Affinity Card, Inc.,* 8 F.Supp.2d at 377.

### A.  *There is good cause to extend Hawthorne's time to serve CDSI.*

■ Fed R. Civ. Proc. 4(m) provides that a court "shall extend the time for service for an appropriate period" if there was "good cause" for the plaintiff's failure to serve the summons and complaint on a defendant within 120 days of filing. I find that Hawthorne clearly has good cause for his failure to serve within the proper time period. In evaluating "good cause," a court should weigh "the plaintiff's reasonable efforts to effect service" against "the prejudice to the defendant [resulting] from the delay." *AIG Managed Market Neutral Fund v. Askin Capital Mgmt., LP,* 197 F.R.D. 104, 108 (S.D.N.Y. 2000). *See also Valeri v. Clapp,* 1989 WL 37676 at \*3 (S.D.N.Y. April 11, 1989) (" 'A liberal interpretation of Rule 4' is appropriate if in the interests of justice," citing *Romandette v. Weetabix Co., Inc.,* 807 F.2d 309, 311 (2d Cir.1986)). Hawthorne's failure to properly serve CDSI appears not to be his fault, as he first tried to serve CDSI through the CT Corporation, only to learn that CDSI had stopped subscribing to that service just a few months before. Then he tried, logically enough, to effect service through Mr. Margolis on employees at the bank branch where he opened the account in dispute.

In *Valeri,* 1989 WL 37676, the court found that the plaintiff had established enough of a showing of good cause to warrant an extension to time to permit the plaintiff to serve process again, even though the plaintiff's process server probably made "sewer service" on the defendant, and the plaintiff made no subsequent attempts to effect service. The process server had sworn (apparently falsely) that service had been completed, and the court concluded that the plaintiff was reasonable in relying on this information. Because the plaintiff was unaware of the defect in service until after the default was entered, well past the 120 day limit of Rule 4(m), the court vacated the default judgment, denied the defendant's motion to dismiss, and granted the plaintiff 60 days to effect service. Hawthorne's situation is even more sympathetic, because in his case it is far from established that Mr. Margolis effected "sewer service." Nor has CDSI established that it would be prejudiced if the court granted Hawthorne another opportunity to serve the defendants. Its conclusory statement in its brief that "it [is] ever more difficult to establish underlying facts" now that "the underlying dispute ... is almost five years old" was not supported by any convincing fact or argument. Supp. Mem. at 10. Finally, Hawthorne has good cause because of the complex corporate structure "Citigroup" has created, with various corporations under the same "umbrella" performing tasks on each other's behalf.

### B.  *Amending the claim to add FSB relates back*

■ Hawthorne may also amend his complaint to add FSB as a second defendant even though the statute of limitations has expired, because the amendment relates back to the date Hawthorne filed his original complaint. Under Fed. Rule Civ. Proc. 15(c)(3) an amendment to a pleading that changes a party relates back when: (1) the claim or defense asserted in the amending pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, (2) the party to be brought in by the amendment has received notice of the institution of the action within the period provided by Rule 4(m) for service of summons and complaint, (3) such notice will not prejudice the party in main-

taining a defense on the merits, and (4) the party to be brought in knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have brought against the party. *See, e.g., Soto v. Brooklyn Corr. Facility*, 80 F.3d 34, 35 (2d Cir.1996).

The first provision is satisfied because the claim against the new defendant would be identical to the claim asserted against the original defendant. The second and third requirements are met because either because: (a) the original complaint and summons were allegedly served on an authorized employee at the bank branch within the original 120 day period, or (b) even if I find that no proper person was ever served at the Citibank branch in Washington, I may still grant Hawthorne further time to serve process under Rule 4(m). *See* Advisory Committee Notes to 1991 Amendments to Rule 4(m) (indicating that Rule 15(c)(3) "allows not only the 120 days specified by the court pursuant to [Rule 4(m) ], but also any additional time resulting from any extension ordered by the court pursuant to [Rule 4(m) ]"). Such service would not prejudice FSB, as discovery has not·yet commenced, and FSB will have ample time to prepare its defense. *See Thomas v. Arevalo*, 1998 WL 427623 at *14 (S.D.N.Y. July 28, 1998) (finding that the added defendant would not be prejudiced because "she was named and served *before* discovery was commenced and she has had an opportunity to prepare a defense." (Emphasis in original)).

The fourth and final requirement of Rule 15(c)(3) is known as the "mistake provision." A plaintiff's failure to name the correct defendant constitutes a mistake within the rule if the new name must be added to correct a mistake, rather than make up for a previous lack of knowledge. *See Barrow v. Wethersfield Police Dept.*, 66 F.3d 466, 470 (2d Cir. 1996) (finding that the plaintiff could not substitute individual officers for "John Doe" defendants because new names cannot be added to correct a prior lack of knowledge). Because Hawthorne "misapprehended the identities" of the parties he wished to sue, his failure to name FSB constitutes a mistake within the meaning of Rule 15(c)(3), rather than a lack of knowledge. *See Soto*, 80 F.3d at 36. Hawthorne's intention was to "hold responsible the entity that provided inaccurate and negative credit information to the credit reporting agencies." Hawthorne Aff. ¶ 6. His mistake was a good-faith mistake that occurred as a result of the confusing nature of the correspondence he received from various entities that share the "Citi" name.

If I assume that Hawthorne's account of service on FSB is accurate, then "FSB should have known that, but for a mistake, concerning the identity concerning the proper party, the action would have been brought against [it]." Red. R. Civ. Proc. 15(c). Despite the misnomer in the caption, the entity "Citibank, F.S.B." was cited many times in the attachments to the complaint and the Citibank account at the Washington branch was mentioned in the body of the complaint. However, even if I credited CDSI's account of service of process and determined that there was never any service on FSB, Hawthorne would still satisfy the requirement of mistake: it is admitted that CDSI and Citibank both first learned of this action when FSB received an incomplete copy of this court's June 27, 2002 Memorandum and Order. (Supp. Mem. at 11). By July of 2002 less than one year had passed from the filing of the original complaint, and six months still remained before the FCRA statute of limitations would expire. At that time, then, both CDSI and FSB should have anticipated that they would be named as defendants in an amended or refiled action by Hawthorne, and I hold that, for the purpose of amending the complaint to add FSB, in the interests of justice Hawthorne had until at least that time to file his original action.

## Conclusion

For the reasons explained above, CDSI's motion to vacate the default judgment is GRANTED. This court's memorandum and order of June 27, 2002, found at 216 F.Supp.2d 45, is hereby WITHDRAWN. CDSI's motion to dismiss Hawthorne's complaint is DENIED. Hawthorne is granted leave to amend his complaint to add FSB as a defendant. Hawthorne is given sixty days

from the date of this order to properly serve CDSI and FSB.

SO ORDERED.