John & Julie STAFFORD, Plaintiffs,

v.

CROSS COUNTRY BANK, Defendant.

No. CIV.A. 3:01CV–534–H.

United States District Court,
W.D. Kentucky,
at Louisville.

May 8, 2003.

Chadwick N. Gardner, Louisville, KY, for Plaintiffs.

Janet Smith Holbrook, Scott K. Sheets, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, WV, for Defendant.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

Plaintiffs John and Julie Stafford filed this action against Defendant Cross Country Bank, (the "Bank"), in connection with debt accumulated on a Bank credit card under John Stafford's name. The Staffords contend that someone else fraudulently obtained the credit card. They have now filed suit alleging violations of federal and state consumer protection statutes as well as state common law. The Bank filed a motion for summary judgment arguing that all of the claims should be dismissed. These motions require the Court to explore the intricate relationship between state and federal regulation of consumer credit practices.

**Summary**

The Court concludes that the Staffords' strongest viable claims are those under the federal Truth–in–Lending Act, as well as those state law claims for invasion of privacy and harassment. While Staffords' claims under the federal Fair Credit Reporting Act and the Kentucky Consumer Protection Act are not dismissed, there appears a great likelihood that each will not survive the required factual scrutiny. In their complaint Staffords allege significant problems with the Bank arising from a non-relationship between the two parties. For that reason, these circumstances are atypical of a Fair Credit Reporting Act case; Stafford has not alleged damage to his credit as a central part of his argument, nor has he alleged that any credit reporting agency caused him damage. The unusual nature of these facts has certainly complicated the analysis. Nevertheless, the results make sense when considered in the light of the purposes of each of the competing statutes and their logical interaction. The most complex analysis is that concerning whether the federal statutes preempt Stafford's state cause of actions for defamation and slander. After a necessarily lengthy examination, the Court concludes that these claims are preempted.

## I.

The Bank is headquartered in Wilmington, Delaware that sends as many as 60 million credit card applications a year to potential customers. The Bank obtains the names and addresses of potential customers from mailing lists and accounts are opened if the name, address and a portion of the social security number match a credit bureau report the Bank pulls for the individual. This case arises from one of the millions of the Bank credit cards that was issued during the 1990s.

Plaintiff John Stafford first learned about this credit card in 2000 when he

attempted to buy a lawnmower and was denied financing because his credit report showed he was delinquent on a Bank credit card in excess of $700. Stafford phoned the Bank and learned that their records reflected that a "John Stafford" had applied for, and obtained a Bank credit card. The person who applied for the Bank card listed Stafford's former address, Stafford's correct social security number, Stafford's mother as the next relative, and a signature using Stafford's full name. During this same telephone conversation, Stafford told the Bank that he neither had any credit cards, nor currently had an account with the Bank. At the Bank's request, Stafford provided his current phone number and residence and they updated their records.

Shortly after this phone conversation, Stafford and his wife, Julie, allege they received incessant phone calls from the Bank regarding the delinquent account. On some occasions, the Staffords contend, the Bank called as many as 8 to 10 times in one day. Additionally, on August 22, 2000, the Bank wrote Stafford at his correct address and advised him that they had conducted a thorough investigation of his complaint and were reposting the $713.64 balance on his account. The letter was signed by the Bank's Vice President for credit card security, James R. Wallace, whom the Staffords allege does not exist. The Staffords also claim the Bank has a habit of sending letters to its customers and signing them by machine with nonexistent phony names.

Stafford did not supply the Bank with a signed affidavit or with any writing bearing his signature, as the Bank requested. Instead, the Staffords turned to an attorney, Chad Garner, to help resolve the situation. On September 5, 2000, Garner wrote the Bank's legal department, advising it that Stafford did not use credit cards, did not have a Bank account, and had never received a bill from the Bank. Garner further requested that the Bank send any information supporting its assertion that Stafford was responsible for the card or had ever used it. Finally, Garner asked that the account not be turned over to a collection agency and that the Bank not take any steps that would harm Stafford's credit until it had undisputed proof that he owed the debt.

On September 12, 2000, however, the Bank sent Stafford a letter saying it planned to report the account to a collection agency and credit bureaus if the amount due was not paid within 48 hours. The letter was signed by a man named Shane Neff who allegedly worked in the Bank's collections department. Stafford alleges the Bank cannot prove that Neff is a real person. Stafford claims that the Bank further refused to send any proof that he had signed an application with the Bank, that he owed the Bank money, or that any changes had been made following his complaints. To the contrary, the Bank sent Stafford a letter requesting a copy of Stafford's driver's license and social security card, along with an affidavit for Stafford to sign and notarize, stating that he did not apply for a Bank credit card, did not use such a card, and would cooperate with the Bank in its investigation. Through an October 11, 2000 letter by his attorney, Stafford refused to do both of these things unless the Bank forwarded any documentation to support its claim that Stafford was responsible for the account. This disagreement continued on October 20, 2000, when Stafford again requested verification of the charges which the Bank refused to provide, contending Stafford himself refused to comply with their requests.

Despite the Staffords repeated complaints, the Bank continued to report the account in the name of John Stafford as delinquent until the Staffords filed this

suit. It appears that the Bank was on notice as early as August 3, 2000 that the account was not Plaintiff's: The Bank's computer records reflect that it recorded on its notes that a "woman at home phone said cardholder moved out 3 years ago." Nevertheless, not until the Staffords sued did the Bank change the reporting of the account from "delinquent" to "disputed." Stafford was listed as owing approximately $750 for charges, financing, late fees, and overlimit fees.

## II.

The Bank has now moved for summary judgment on all five counts in the Stafford's amended complaint.[1] First, the Bank contends the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, provides no private right of action for plaintiffs against a furnisher of information to a consumer reporting agency. Second, the Bank requests the Court find the FCRA preempts the state causes of action for defamation, invasion of privacy, slander, and harassment. Additionally, the Bank contends the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, is inapplicable because there were no "billing errors" in this case. Further, the Bank argues the FCRA also preempts all of Stafford's Kentucky Consumer Protection Act ("KCPA") claims. Last, the Bank argues the Staffords cannot bring claims under the Fair Debt Collection Practices Act, ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, because the Bank is not a "debt collector," as the Act requires.

As a preliminary matter, all of the claims, with the exception of the harassment claim, must be dismissed to the extent Julie Stafford is the Plaintiff. In their Reply Memorandum, Plaintiffs concede that, at best, Julie Stafford only has standing to raise the state tort claims. Having analyzed the facts, the Court concludes, she was not an injured party and therefore is not a proper plaintiff to bring the defamation, slander, or invasion of privacy claims. The Court will therefore now addresses each of the Bank's arguments, only considering John Stafford's claims.

## III.

Two of Stafford's claims require the Court to engage in a highly detailed review of several portions of the FCRA. While the outcome in this case is ultimately achieved by applying the statute's provisions in a step-by-step fashion as the statute requires, the Court thinks the complexity of this task is aided by reviewing the FCRA's purpose, scope, and general framework. The Court therefore begins by briefly discussing the relevant FCRA provisions and then considers (1) whether the FCRA affords Stafford a private right of action based on these facts, and (2) the extent to which the FCRA provides the Bank with qualified immunity from state law claims.

In 1968, Congress enacted the FCRA in order to promote "efficiency in the Nation's banking system and to protect consumer privacy," 15 U.S.C. § 1681(a). In so doing, Congress sought to protect the needs of commerce and facilitate the dispersion of credit information while, at the same time, requiring accuracy and confidentiality. *See Jones v. Federated Financial Reserve Corp.*, 144 F.3d 961, 965 (6th Cir.1998) (noting that "the FCRA is aimed at protecting consumers from inaccurate information in consumer reports and at the establishment for credit reporting procedures that utilize correct, relevant and up-

---

1. Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court has kept this standard in mind throughout this opinion, refusing summary judgment where it appears the facts are not only in dispute, but also unclear.

to-date information in a confidential and responsible manner"). To achieve these ends while also allowing deference to the states' regulation of consumer credit, the FCRA broadly recognizes and provides for two types claims.

■ First, a consumer may bring a suit under this Court's federal question jurisdiction for a violation of the FCRA's detailed reporting requirements. The FCRA places distinct obligations on three types of entities: (1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies. *Carney v. Experian Info. Solutions, Inc.*, 57 F.Supp.2d 496, 500 (W.D.Tenn.1999). Here, for instance, the parties agree that the Bank is a furnisher of credit information. Therefore, under the FCRA's regulatory scheme, the Bank's obligations are laid out in 15 U.S.C. § 1681s–2 which delineates the responsibilities of furnishers of credit information. Having set forth these obligations, Congress authorizes a consumer, under § § 1681n and 1681o to sue for either willful or negligent violations of these enumerated duties.

■ Second, the FCRA also recognizes that a consumer may still bring an action proceeding under state common law for defamation, slander or invasion of privacy, but only if the consumer proves malice. That is, § 1681h(e) grants consumer reporting agencies, users of consumer reports, and furnishers of information qualified immunity from state law claims of this nature. Section 1681h(e) is therefore not a grant of federal subject matter jurisdiction, but rather creates a defense a consumer must overcome to succeed on a

state law claim against someone acting in a capacity that is regulated by the Act. *See Shaner v. Fleet Bank,* 132 F.Supp.2d 953, 957 (M.D.Al.2001). Because Stafford has alleged claims falling under both categories the Court must address each separately.

## A.

Stafford first claims that the Bank, as a furnisher of information, either willfully or negligently violated its duties under § 1681s–2. The parties have not yet addressed the facts with regard to this claim and the Court is therefore not prepared to reach a definitive conclusion. Instead, both sides have chosen to argue over whether § 1681s–2 even permits Stafford to bring a private cause of action.

■ For all practical purposes, § 1681s–2 operates as two components. The Court must look at each component. The first component consist of subsections (a), (c), (d). Subsection (a) broadly imposes duties upon furnishers of credit information to provide consumer reporting agencies with accurate information. Subsections (c) and (d), in turn, limit the remedies available for violations of subsection (a). More precisely, subsection (c) eliminates the availability of direct remedies to consumers by making §§ 15 U.S.C. 1681n and 1681o—the FCRA's broad provisions creating civil liability for willful and negligent noncompliance respectively—inapplicable to violations of subsection (a).[2] Subsection (d) provides that the requirements imposed by subsection (a) are only enforceable by government officials.[3] Clearly then, Stafford cannot bring a private cause of action for any of the Bank's al-

---

**2.** 15 U.S.C. § 1681s–2(c) states: "Sections 1681n and 1681o of this title do not apply to any failure to comply with subsection (a) of this section, except as provided in section 1681s(c)(1)(B) of this title." Section 1681(c)(1)(B) delineates the remedies avail-

able to suits brought by state officers, as opposed to private consumers, for negligent or willful violations of § 1681s–2.

**3.** 15 U.S.C. § 1681s–2(d) states: "Subsection (a) of this section shall be enforced exclusively

leged violations of subsection (a). *See, e.g., Aklagi v. Nationscredit Financial Services Corp.*, 196 F.Supp.2d 1186, 1192 (D.Kan.2002); *Hasvold v. First. USA Bank*, 194 F.Supp.2d 1228, 1231 (D.Wyo. 2002); *DiMezza v. First USA Bank, Inc.*, 103 F.Supp.2d 1296, 1299 (D.N.M.2000).

■ In contrast, the second component of § 1681s–2, subsection (b), contains no limitations on the availability of remedies. Based on this clear statutory difference, the Court concludes § 1681s–2(b) does allow a consumer to bring a private cause of

action against a furnisher of credit information for either negligent, § 1681o, or willful, § 1681n, violations of the FCRA. Virtually all courts considering this issue are in agreement.[4]

■ ·The analysis, however, does not end here. Subsection (b) pertains only to the requirements imposed on a furnisher of information—like the Bank—to conduct an investigation after receiving notice of a dispute regarding the accuracy of information provided to a consumer reporting agency.[5] More important, subsection (b)

under section 1681s of this title by the Federal agencies and officials and the State officials identified in that section."

**4.** *See, e.g., Aklagi*, 196 F.Supp.2d at 1193; *Redhead v. Winston & Winston, P.C.*, 2002 WL 31106934, at \*4, 2002 U.S. Dist. LEXIS 17780, \*12 (S.D.N.Y.2002); *Hawthorne v. Citicorp Data Systems*, 216 F.Supp.2d 45, 47–48 (E.D.N.Y., 2002); *Nelson v. Chase Manhattan Mortgage Corp.* 282 F.3d 1057, 1059–60 (9th Cir.2002);; *Thomasson v. Bank One, Louisiana, N.A.*, 137 F.Supp.2d 721, 723 (E.D.La. 2001); *Whitesides v. Equifax Credit Info. Servs., Inc.*, 125 F.Supp.2d 807, 812 (W.D.La. 2000); *McMillan v. Experian Info., Servs.*, 119 F.Supp.2d 84 (D.Conn.2000); *Campbell v. Baldwin*, 90 F.Supp.2d 754 (E.D.Tex.2000); *DiMezza*, 103 F.Supp.2d at 1300; *but see Carney*, 57 F.Supp.2d 496. The reasoning in support of this majority view has been aptly summarized:

> The civil liability sections, 15 U.S.C. § 1681n and 1681o, explicitly provide a private right of action for consumers wishing to enforce any provision of the Fair Credit Reporting Act against "any person" who either "willfully fails to comply" or is "negligent in failing to comply." Absent any explicit limitation, the plain language of 15 U.S.C. §§ 1681n, 1681o, 1681s–2(b) and (c) provide a private right of action for a consumer against furnishers of information who have willfully or negligently failed to perform their duties upon notice of a dispute. Furthermore, the negative inference of explicitly precluding a consumer's right of action for violations of § 1681s–2(a) is that they are preserved in § 1681s–2(b). Accordingly, the plain language of the Fair

> Credit Reporting Act compels the conclusion that there is a private right of action for consumers to enforce the investigation and reporting duties imposed on furnishers of information.
>
> *DiMezza*, 103 F.Supp.2d at 1300.

**5.** 15 U.S.C. § 1681s–2(b) states:

> (b) Duties of furnishers of information upon notice of dispute.
>> (1) In general. After receiving notice pursuant to section 611(a)(2) [15 USCS § 1681i(a)(2)] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [15 USCS § 1681i(a)(2)]; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.
>> (2) Deadline. A person shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the person to a consumer reporting agency, before the expiration of the period under section 611(a)(1) [15 USCS § 1681i(a)(1)] within which the consumer reporting agency is

makes the furnisher's responsibilities contingent upon receiving "notice pursuant to section 1681i(a)(2)." [6] This means that a furnisher of credit information, such as the Bank, has no responsibility to investigate a credit dispute until *after* it receives notice from a consumer reporting agency. Under the statutory language, notification from a consumer is not enough. *See, e.g., Lowe v. Surpas Res. Corp.*, 253 F.Supp.2d 1209, 1253–54 (D.Kan.2003) (collecting cases); *Aklagi*, 196 F.Supp.2d at 1193; *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631 (5th Cir.2002); *Jaramillo v. Experian Info. Solutions, Inc.* 155 F.Supp. 356, 363 (E.D.Pa.2001); *Yelder v. Credit Bureau of Montgomery, L.L.C.*, 131 F.Supp.2d 1275, 1289 (M.D.Ala.2001) *Dornhecker v. Ameritech Corp.*, 99 F.Supp.2d 918, 928–29 (N.D.Ill.2000). It does not appear that the Bank received notice from a consumer reporting agency, in which case the FCRA claim would be dismissed. However, the Court cannot say for sure based on the cited record. Therefore, the FCRA claim remains for the time being. Either of the parties is free to raise this issue later if the facts become clear.

## B.

Stafford has also filed four state law tort claims against the Bank for defamation, slander, invasion of privacy, and harassment. The analysis here is significantly complicated in several respects. First, the FCRA contains two overlapping and potentially contradictory preemption provisions, § 1681t(b)(1)(F) and § 1681h(e), which limit the circumstances under which Plaintiff may bring his state common law claims. Second, there are two conflicting approaches as to how best analyze and apply these two provisions. Third, only some of the four state law claims are even covered by each of these provisions, meaning they must be addressed separately. A proper consideration of the extent to which the FCRA even allows a state common law claim against a furnisher of credit information must tackle each of these issues.

To begin, the FCRA's two separate preemption provisions are contained in § 1681t(b)(1)(F), which provides furnishers of credit with absolute immunity when fulfilling their obligations under § 1681s–2; [7]

required to complete actions required by that section regarding that information.

**6.** 15 U.S.C. § 1681i(a)(2) states:
(2) Prompt notice of dispute to furnisher of information.
(A) In general. Before the expiration of the 5–business–day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer.
(B) Provision of other information from consumer. The consumer reporting agency shall promptly provide to the person who provided the information in dispute all relevant information regarding the dispute that is received by the agency from the consumer after the period referred to in subparagraph (A) and before the end of the period referred to in paragraph (1)(A).

**7.** Section 1681t(b)(1)(F) states in full:
No requirement or prohibition may be imposed under the laws of any State ... with respect to any subject matter regulated under ... section § 1681s–2, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply—
(I) with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on the date of enactment of the Consumer Credit Reporting Reform Act of 1996 [enacted Sept. 30, 1996]); or
(ii) with respect to section 1785.25(a) of the California Civil Code (as in effect on the date of enactment of the Consumer Credit Reporting Reform Act of 1996 [enacted Sept. 30, 1996]);

and § 1681h(e), which provides furnishers of credit information with qualified immunity from suits "proceeding in the nature of defamation, invasion of privacy, or negligence ..."[8] Importantly, Congress only recently added the first, more sweeping, § 1681t(b)(1)(F) language in a series of 1996 amendments. Those amendments made no mention of the earlier § 1681h(e) language. The tension between these two provisions therefore results from the fact that § 1681h(e) permits state tort claims, but requires a higher standard of proof for those in the nature of defamation, slander, or invasion of privacy, while § 1681t(b)(1)(F) prohibits all state claims covered by § 1681s–2. These inherent contradictions have caused disagreement about how best to harmonize them. *See Riley,* 226 F.Supp.2d 1316 (noting the complete lack of circuit court authority on how to analyze the preemption provisions and discussing the various approaches to analyzing the two provisions). No circuit court has weighed in on this issue.

Under the more sweeping approach, some courts have held that the newer section, § 1681t(b)(1)(F), completely preempts *all* state causes of action, and thus also eliminates the possibility of *any* supplemental state claims against furnishers of information. *See, e.g., Hasvold,* 194 F.Supp.2d at 1239 (dismissing state claims because "federal law under the FCRA preempts plaintiff's claims against the defendant relating to it as a furnisher of information"); *Jaramillo,* 155 F.Supp.2d at 362 ("The plain language of section 1681t(b)(1)(F) clearly eliminated all state causes of action against furnishers or information, not just ones that stem from statutes that relate specifically to credit reporting"). The logic in these cases is that because § 1681t(b)(1)(F) preempts "any subject matter regulated under ... section 1681s–2"—which addresses the responsibilities of furnishers of credit information—Congress intended to preempt all state law claims that bear any connection to furnishers of credit information. *See Jaramillo,* 155 F.Supp.2d at 361–62. Adopting this rule means that no state tort claims are ever permissible against any furnisher of credit information.

■ Other courts hold that this preemption provision has a more limited scope. *See, e.g., Vazquez–Garcia v. Trans Union De Puerto Rico,* 222 F.Supp.2d 150, 161 (D.P.R.2002); *Aklagi,* 196 F.Supp.2d at 1194. Under this approach the only state law claims preempted are those relating to the obligations of furnishers of information once they know, or have reason to know, about possible inaccuracies. That is, these courts interpret § 1681t(b)(1)(F) as preempting only those claims that relate to the actual language of § 1681s–2. For a multitude of reasons, the Court concludes that this latter approach is better and more accurately interprets the FCRA.

For one, to find that § 1681t(b)(1)(F) preempts all state tort claims would extend that section well beyond its express

---

15 U.S.C. § 1681t(b)(1)(F).

**8.** Section 1681h(e) states in full:

(e) Limitation of liability. Except as provided in sections 1681n and 1681o, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.
15 U.S.C. § 1681h(e).

terms. Section 1681t(b)(1)(F) simply states that "no requirement or prohibition may be imposed under the laws of any state ... with respect to *any subject matter* regulated under ... section 1681s–2 ..." (emphasis added). Section 1681s–2, in turn, explains the duties of furnishers of information to provide accurate information, 15 U.S.C. § 1681s–2(a), and the obligations of furnishers once they are notified of a dispute. 15 U.S.C. § 1681s–2(b). The Bank's argument, however, would have the Court also preempt all state law claims— including those *not* regulated by § 1681s–2. The distinction is important because, as this case illustrates, some state tort claims against furnishers of information have nothing to do with the furnisher's correlation to a credit reporting agency.

 Several cannons of statutory construction also suggest that Congress in fact intended to preserve § 1681h(e) as it applied to furnishers of credit information. First, where "Congress explicitly enumerates exceptions to a general prohibition, additional exceptions are not to be implied in the absence of evidence of a contrary legislative intent." *TRW*, 534 U.S. at 28, 122 S.Ct. 447. In this case, in § 1681t(a) Congress provided that states were free to enact laws regulating consumer credit reporting. Congress then enumerated several exceptions to this rule in § 1681t(b)(1), one of which was for instances where the subject matter the state sought to regulate was already regulated by § 1681s–2. Importantly, § 1681s–2 says absolutely nothing about state common law causes of action, such as those sounding in defamation or slander. Instead, it pertains to the process for collecting information and what a furnisher must do once it is notified the information it possesses is disputed. The most natural reading of § 1681t, then, is that Congress implicitly excluded an exception pertaining to all state common law claims against furnishers of information by explicitly only

including the subject matter regulated under § 1681s–2. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (*"Expressio unius est exclusio alterius."*).

 Another well-known rule of statutory construction is that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews,* 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001); *see United States v. Menasche,* 348 U.S. 528, 538–539, 75 S.Ct. 513, 99 L.Ed. 615 (1955) ("It is our duty to give effect, if possible, to every clause and word of a statute"). When it enacted § 1681t(b)(1)(F), Congress neither made reference to nor expressly repealed § 1681h(e). Moreover, the Court cannot assume in these circumstances that a more recently enacted provision, such as § 1681t(b)(1)(F), amounts to an implied repeal of the former—in this case § 1681h(e). In fact, an "implied repeal" will only be found where provisions in two statutes" are in "irreconcilable conflict," or where the latter act covers the whole subject of the earlier one and "is clearly intended as a substitute." *Branch v. Smith,* — U.S. ——, 123 S.Ct. 1429, 1441, 155 L.Ed.2d 407 (2003). Neither is true here. The Court is able to reconcile the two provisions; the entire subject matter discussed in § 1681t(b)(1)(F) does not cover the whole subject matter provided in § 1681h(e). As such, the Court must assume § 1681h(e) still applies and was not repealed with regard to furnishers of credit information.

Last, as a matter of public policy, the FCRA is most properly read as harmonizing both preemption provisions. To be sure, because § 1681s–2 regulates the behavior of furnishers of credit information,

a fair argument can be made, as two other district courts have done, that any tort claims against those furnishers affect the "subject matter" regulated therein. But, for all practical purposes, adopting that approach makes § 1681s–2 limitless; states would lose any and all power to regulate credit card companies. All state law tort claims against companies like the Bank for behavior completely unrelated to either their reporting function, or negligence in supplying information might be eliminated. The FCRA generally and § 1681t(b)(1)(F) specifically were not intended to broadly protect credit card companies. Rather, as its stated findings suggest in § 1681(a), Congress purported to expand consumer protection and not shrink it as such a broad interpretation of § 1681s–2 would do.

■ In short, the Court concludes that § 1681h(e) and § 1681t(b)(1)(F) must be read consistently. The Court must analyze preemption under each provision. The Court begins by determining which, if any claims, are covered by the more far-reaching § 1681t(b)(1)(F) preemption provision, and then analyzes the remaining claims under § 1681h(e).

**1.**

Section 1681t(b)(1)(F), the absolute immunity provision, provides in relevant part:

> No requirement of prohibition may be imposed under the laws of any State-... with respect to any subject matter regulated under ... section 1681s–2 of this title, relating to the responsibilities of

persons who furnish information to consumer reporting agencies ...

15 U.S.C. § 1681t(b)(1)(F) (emphasis added.).

■ Thus, to the extent that the Stafford's tort claims implicate the Bank's conduct falling within the "subject matter regulated under ... section 1681s–2," those claims are preempted.

■ As a preliminary matter, § 1681s–2 only regulates conduct involved in the reporting of credit information. The § 1681t(b)(1)(F) preemption provision, then, clearly does not apply to those tort claims that only involve the Bank's actions independent of its function as a furnisher of credit information. The Stafford's harassment claim appears to fall outside § 1681s–2's reach, as do aspects of the invasion of privacy claim.[9]

As to the defamation and slander claims, some of the alleged conduct occurred after the Bank knew it possessed inaccurate information and some of the conduct occurred prior to such knowledge. However, § 1681s–2 only implicates conduct occurring after the Bank knew it possessed inaccurate information, or consciously avoided such knowledge. To the extent the Bank furnished any inaccurate information *after* receiving notice of the Stafford's dispute, the Bank's conduct falls squarely within § 1681s–2 and, therefore, is "subject matter regulated under ... section 1681s–2 of this title." 15 U.S.C. § 1681t(b)(1)(F). As such, § 1681t(b)(1)(F) completely preempts any state law defamation, slander, or invasion

---

9. Because the Plaintiff is ultimately the master of his complaint, the Court cannot say for sure whether these claims fall beyond § 1681s–2's reach. The Court is confident the harassment claim—stemming only from the Bank's repeated phone calls—does not relate to the Bank's reporting function. It also seems plausible that the invasion of pri-

vacy claim, to the extent it relates to persistent requests for private information, also is not preempted by § 1681t(b)(1)(F). That being said, any portions of these two claims that concern the Bank as a furnisher of credit information will ultimately be analyzed in the same fashion as the defamation and slander claims.

of privacy claims predicated on the Bank furnishing inaccurate information to a consumer reporting agency *after* the Bank received notice of, or had reason to know about the dispute. *See, e.g., Vazquez–Garcia,* 222 F.Supp.2d 150; *Aklagi,* 196 F. Supp.2d at 1194–95.

It appears that the Bank furnished inaccurate information to a consumer reporting agency *before* it received notice or had reason to know of the Stafford's dispute. That conduct is not regulated under § 1681s–2, *Aklagi,* 196 F.Supp.2d at 1195, and is not preempted by § 1681t(b)(1)(F). The Court should analyze these claims for preemption under § 1681h(e). *See id.; Dornhecker,* 99 F.Supp.2d at 930–31.

**2.**

Section 1681h(e) states in relevant part: [N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against ... any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title ... except as to false information furnished with malice or willful intent to injure such consumer. 15 U.S.C. § 1681h(e).

To start, § 1681h(e) does not provide qualified immunity for either the harassment or invasion of privacy claims. Nothing in the plain language of § 1681h(e) suggests that harassment claims are preempted. This makes sense as the harassment claim appears to have no con-

nection to the Bank's capacity as a furnisher of credit information. Similarly, the text of § 1681h(e) only provides qualified immunity from state law claims related to the disclosure of information. Parts of the invasion of privacy claim seems to bear no connection to the Bank's capacity as a furnisher of information.

■ In light of the Court's § 1681t(b)(1)(F) analysis what remains of the defamation and slander claims is any action the Bank took before knowing or having reason to believe that Stafford did not apply for, nor possessed the Bank credit card. Under § 1681h(e)'s qualified immunity standard, Stafford may only pursue these defamation and slander claims if he can prove the Bank acted maliciously or with a willful intent to injure her.[10] The FCRA does not define the term willful, but courts have interpreted it as requiring a showing that the defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others." *Stevenson v. TRW Inc.,* 987 F.2d 288, 293 (5th Cir.1993).[11] Regardless, Plaintiffs' success in overcoming this hurdle is immaterial. Even if Stafford met the higher standard to pursue the defamation and slander claims, those claims would, nevertheless, be preempted by § 1681t(b)(1)(F). This is because § 1681s–2 regulates the furnishing of information if done knowingly or if the furnisher "consciously avoids knowing that the information is inaccurate." In other words, the remaining parts of the defamation and slander claims would then involve a subject-matter regu-

**10.** To be clear, courts holds that § 1681h(e) preempts a state's common law to the extent that it creates qualified immunity and the standard of malice or willful intent to injure must be met to overcome this qualified immunity. *See Thornton v. Equifax,* 619 F.2d 700 (8th Cir.1980).

**11.** Additionally, in § 1681h(e) cases, courts use the following defamation of malice: a

statement is made with malice if made "with knowledge that it was false or with reckless disregard of whether it was false or not." *See, e.g., Whelan v. Trans Union Credit Reporting Agency,* 862 F.Supp. 824, 834 (E.D.N.Y.1994)(*citing New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)).

lated under § 1681s–2, which § 1681t(b)(1)(F) preempts.[12] Thus, those claims, as well as the portions of the invasion or privacy claim related to the Bank's capacity as a furnisher of information are dismissed.

## IV.

 Stafford has also filed a claim for violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* TILA is a remedial act intended to protect consumers, and courts have liberally construed its provisions in favor of consumers. 15 U.S.C. § 1601(a); *See Belmont v. Associates Nat'l Bank,* 119 F.Supp.2d 149, 158 (2000); *Ellis v. General Motors Acceptance Corp.,* 160 F.3d 703, 707 (11th Cir.1998); *Begala v. PNC Bank, Ohio, Nat'l Ass'n,* 163 F.3d 948, 950 (6th Cir.1998), *N.C. Freed Co. v. Board of Governors of Fed. Reserve System,* 473 F.2d 1210, 1214 (2nd Cir.1973). The Court now considers whether, as the Bank contends, Stafford has failed to sufficiently allege a TILA violation

To state a cause of action under TILA, a plaintiff must allege the existence of a "violation" of one or more of TILA's provisions. 15 U.S.C. § 1640(e). A plaintiff may maintain a cause of action under TILA if he alleges a violation of § 1666's billing dispute resolution procedures. Specifically, § 1666 provides that on receipt of timely notice of a billing error, a card issuer

**12.** Although the logic in reaching this conclusion appears circuitous, this outcome makes sense when viewed in light of the FCRA's purpose. In this instance, it appears Congress made two significant conclusions. First, as to a credit card company's general *collection* of information—as opposed to its potential publication of one individual's false information—Congress chose to enforcement to state and federal officers. Second, as to a furnisher's *reporting* of information, in cases where private citizens are the victim of a credit card company's misreporting of information, they may sue for negligent or willful violations of the FCRA, but only if the furnisher also receives notification from a credit reporting agency of the dispute. In other words, in both instances, Congress clearly chose to require something more than a complaint by a private consumer in order to succeed in litigation against a furnisher of information like the Bank. This tradeoff is consistent with other parts of he FCRA. As this Court has previously noted, a consumer's rights under the FCRA, although far-reaching are not absolute:

> In effect, the FCRA created a fair mechanism through which creditors and insurers could obtain a consumer's report in order to make an offer and evaluate creditworthiness. Conversely, it also established procedures to ensure accuracy and to protect consumer privacy. The FCRA strikes a balance between these two ends. Evidence of this give and take is prevalent throughout the FCRA. When preparing a report, a consumer reporting agency must follow "reasonable procedures to assure maximum possible accuracy." 15 U.S.C. 1681e(c) (emphasis added). The stated aim is therefore perfection in protecting the consumer, but the burden on the credit reporting agency is only to act reasonably. Similarly, it is presumed that a consumer's privacy will not be violated in the context of a firm offer for a permissible purpose, unless that consumer personally seeks to have her name removed from a consumer reporting agency's list. 15 U.S.C. § 1681b(c). Moreover, if a plaintiff seeks to bring a state law defamation, invasion of privacy, or negligence reporting claim against a consumer reporting agency, she can succeed only upon overcoming the highest standard of malice. 15 U.S.C. § 1681h(e). Last, only after a creditor or insurer takes action against a consumer's interest, is that consumer informed of her right to see their credit report or know that it was used against her. 15 U.S.C. § 1681a(k). Taken together these provisions illustrate that 15 U.S.C. § 1681b(a)(3)(C), even absent the "application" requirement Plaintiff asks this Court to impute, is consistent with Congress's clear desire to allow some carefully proscribed investigation into a consumer's credit history, even without his knowledge or consent.

*Scharpf v. AIG Marketing, Inc.,* 242 F.Supp.2d 455, 462 (W.D.Ky.2003).

must acknowledge the notice in writing within thirty days, 15 U.S.C. § 1666(a)(3)(A) (1998); 12 C.F.R. § 226.13(c) (2001), and, within ninety days, either correct the cardholder's account, 15 U.S.C. § 1666(a)(3)(B)(I); 12 C.F.R. § 226.13(e), or send the cardholder a written explanation of why the charges in question are correctly reflected on the statement, 15 U.S.C. § 1666(a)(3)(B)(ii); 12 C.F.R. § 226.13(f). *See generally Dawkins v. Sears Roebuck & Co.,* 109 F.3d 241, 243 (5th Cir.1997). Similarly, § 1666a(a) prohibits a creditor from reporting a delinquent account to a credit reporting agency once it receives notice from the obligor that the account is disputed. In that case, after the obligor's first notification, the creditor must comply with the detailed requirements of § 1666 and allow the obligor to pay any undisputed amount. Also, under § 1666a(b), if a creditor receives a second notification from the obligor that the account is disputed, the creditor may not report the delinquency unless it also reports the dispute and notifies the individual of each party to whom the creditor is reporting the delinquency.

As a preliminary hurdle to asserting any of these claims, a plaintiff must prove a "billing error."[13] *See Belmont v. Assocs. Nat'l Bank,* 119 F.Supp.2d 149. Section 1666(b) contains a list of events which constitute a billing error for the purposes of the Act.[14] Plaintiff contends that a creditor's demand for payment on an account from someone who is allegedly not the obligor on the account qualifies as a billing error under paragraphs (1) and (2) of § 1666(b). Those sections, respectively, define a billing error to be a "statement of an extension of credit which was not made to the obligor," § 1666(b)(1), or "an extension of credit for which the obligor requests additional clarification including documentary evidence thereof." § 1666(b)(2). In response, the Bank contends that TILA is wholly inapplicable to this case because Stafford's claim is premised on the fact that a transaction never occurred. The Bank essentially characterizes the statute as one that concerns transaction disputes and not one that regulates fraudulent credit card applications.

The Court finds these arguments unpersuasive. Although no circuit court has

**13.** Plaintiffs contend that a "billing error" is arguably not required here. The Court disagrees. Sections 1666a(a) and 1666a(b) both say a creditor must meet the requirements of § 1666. Section 1666, in turn, is exclusively concerned with the process of correcting "billing errors." Therefore the only logical way to read § 1666a is as implicitly requiring a "billing error."

**14.** Section 1666(b) defines "billing error" to be any of the following

 (1) A reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement.

 (2) A reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof.

 (3) A reflection on a statement of goods or services not accepted by the obligor or

his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of a transaction.

 (4) The creditor's failure to reflect properly on a statement a payment made by the obligor or a credit issued to the obligor.

 (5) A computation error or similar error of an accounting nature of the creditor on a statement.

 (6) Failure to transmit the statement required under section 127(b) of this Act [15 USCS § 1637(b)] to the last address of the obligor which has been disclosed to the creditor, unless that address was furnished less than twenty days before the end of the billing cycle for which the statement is required.

 (7) Any other error described in regulations of the Board.

 15 U.S.C. § 1666(b).

considered this issue, at least two other district courts have carefully analyzed whether a consumer who is not an obligor is entitled to TILA's protections. First, in a remarkably similar case, *Belmont*, 119 F.Supp.2d at 163–64, a court considered whether a credit card company violated TILA by erroneously billing a debtor's father for credit card charges, even though the father had removed his name from the son's credit account several years earlier. The creditor, much like the Bank, argued that if the plaintiff claimed he was not obligated on the account, then the plaintiff should not be entitled to TILA's protection. The court rejected this argument stating:

> Given the remedial nature of TILA, Congress's intent to protect consumers, and the courts' mandate that TILA be liberally construed, ... the term "obligor[s]" must necessarily be construed to include those whom the creditor claims are obligors, as well as individuals who are in fact obligors in the contract law sense. Otherwise, there would be a lacuna in the statute, and an important area in the statute's remedial scheme would be left unprotected. A consumer who believes that he is not obligated under a credit account, and promptly notifies the creditor of the mistake through a proper notice of billing error, deserves the broad protections that Congress intended under the Act.

*Id.* at 163–64 (internal citations omitted).

In a second relevant case, *Carter v. Atchley Ford, Inc.*, 2002 WL 802682, at *1, 2002 U.S. Dist. LEXIS 6095, at *2–*4 (D.Neb.2002), the plaintiff's son fraudulently purchased a car under his mother's name. The plaintiff had no knowledge of the transaction until she received a congratulatory note on her purchase from the dealer. *Id.* Plaintiff sued the car dealer who argued that, because her son forged the signature, there was no "transaction" that could be governed by the TILA. *Id.* at

*3, 2002 U.S. Dist. LEXIS 6095, at *8. Adopting the *Belmont* reasoning, the court concluded that it was clear the Plaintiff was entitled to TILA's protection. *Id.* at *3–*4, 2002 U.S. Dist. LEXIS 6095, at *10–*11.

Clearly, the Bank has treated and continues to treat Stafford as the obligor. The Bank sent Stafford numerous statements in the form of letters claiming that he owed in excess of $700.00. Stafford notified the Bank repeatedly—including over the phone and through his attorney in writing—that the debt was not his, he never had a Bank account, and never used the card. These contacts amounted to sufficient notification of a billing error and certainly responded to a "statement of an extension of credit which was not made to the obligor," § 1666(b)(1), and/or "an extension of credit for which the obligor requests additional clarification including documentary evidence thereof." § 1666(b)(2). Finding that these circumstances involve a billing error, the Court will allow Plaintiff's TILA claims to proceed.

### V.

Stafford also claims that the Bank violated the Kentucky Consumer Protection Act ("KCPA"). Principally, he relies on KRS 367.170(1) which prohibits "unfair [and unconscionable], false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Stafford argues that the Bank intentionally and unfairly requested admittedly confidential information, was deceptive in its practice of sending multiple letters from people who did not exist with titles that they did not have, reported debt that was false, and misled consumer reporting agencies. Additionally, he claims the Bank took advantage of, and attempted to extort money from consumers through threats and false

reporting. In response, the Bank makes two arguments.

### A.

 The Bank first contends that Stafford lacks standing to make a KCPA claim, both because the law does not permit a private right of action in this case, and because he lacks privity with the Bank. The Court disagrees on both counts. KRS 367.220(1) clearly provides that:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by KRS 367.170, may bring an action .... Nothing in this subsection shall be construed to limit a person's right to seek punitive damages where appropriate.

KRS 367.220(1).

 The private right of action which the KCPA creates is restricted. The Court must first determine whether the purchase of credit amount to a "service" under the KCPA. This is a question of first impression in Kentucky. Therefore, the Court must predict how Kentucky's highest court would decide the issue based on the all available data. *See Davis v. Ford,* 244 F.Supp.2d 784 (W.D.Ky.2003); *Dinsmore Instrument Co. v. Bombardier, Inc.,* 199 F.3d 318, 320 (6th Cir.1999).

For several reasons, the Court concludes that Kentucky's highest court would find this sale of credit to be a "service" within the meaning of the KCPA. For one, this seems congruent with the statute's text. The Bank claims that Stafford purchased a Bank credit card for personal use; thus, he was certainly part of "the class of persons who purchased services primarily for personal, family or household purposes." *Stevens v. Motorists Mut. Ins.*

*Co.,* 759 S.W.2d 819, 820 (Ky.1988). Second, the Kentucky Supreme Court has held that the "purchase of an insurance policy is a purchase of a 'service' intended to be covered by the Consumer Protection Act." *Id.* The purchase of credit is not particularly different from the purchase of insurance; both involve the extension of financial services and both implicate scenarios were the possibility of consumer fraud exists. The most relevant Kentucky opinion therefore supports this conclusion.

Third, nearly every state court deciding this question in similar contexts has also reached this outcome. The California Supreme Court has held that, although the term "services" in the California Consumer Protection Act was defined to include "services furnished in connection with providing insurance," a bank's furnishing of financing services should be reasonably be construed to lie within the definition of "services." *King v. Central Bank,* 18 Cal.3d 840, 135 Cal.Rptr. 771, 558 P.2d 857 (Cal.1977). Similarly, Hawaii's Supreme Court concluded that borrowing money from a bank fell within the ambit of its consumer protection act, "in as much as (1) a loan extended by a financial institution is activity involving "conduct of any trade and commerce" and (2) loan borrowers are "consumers" within the meaning of the act." *Hawaii Community Federal Credit Union v. Keka,* 94 Hawai'i 213, 227, 11 P.3d 1 (Haw.2000). Other state courts have reached the same conclusion. *See, e.g., Baird v. Norwest Bank,* 255 Mont. 317, 843 P.2d 327 (Mont.1992); *Russell v. Fidelity Consumer Discount Co.,* 72 B.R. 855, 870–72 (Bankr.E.D.Pa.1987); *State ex rel. Miller v. Midwest Service Bureau, Inc.,* 229 Kan. 322, 623 P.2d 1343 (1981); *State ex rel. Guste v. Council of New Orleans,* 309 So.2d 290 (La.1975). Taken together, the Court concludes that the Kentucky Supreme Court would follow

these courts and find that the KCPA covers the sale of credit.

Next, the Court must consider whether Stafford qualifies to bring a KCPA claim. The Bank argues that only one in privity may bring a suit under the KCPA and points out that Stafford vigorously denies ever entering into a contractual relationship with the Bank. Nevertheless, the Court concludes that the Bank's own continued assumption of privity, coupled with its alleged unfair, false, and misleading tactics, is enough to overcome this hurdle. Kentucky's highest court has noted, "the Kentucky legislature created a statute which has the broadest application in order to give Kentucky consumers the broadest possible protection for allegedly illegal acts." *Stevens*, 759 S.W.2d at 821. To deny a potential remedy simply because the consumer says he never intended to become a purchaser when, for all practical purposes he was treated as one, would belittle the KCPA's purpose. It would create an unintended loophole where individuals are treated like customers, yet denied KCPA's protections. The Court declines to adopt such an approach.[15]

**B.**

 Second, the Bank further argues that even if Stafford does have privity, § 1681t(b)(1)(F) of the FCRA preempts the KCPA. The Court again returns to that section. As previously seen, §§ 1681s–2(a) and (c) preclude any civil liability by way of a private cause of action against furnishers of information who fail to provide accurate information after receiving notice from a consumer, or having reason to believe they should be on notice. To the extent the KCPA provides a private cause of action against furnishers of information in that situation, it relates to the subject matter of §§ 1681s–2(a) & (c) and conflicts with those provisions. *See Carney*, 57 F.Supp.2d at 503.

In this case, based on the evidence provided, it appears that most of the Bank's alleged unfair, unconscionable, false, misleading, or deceptive acts occurred *after* Stafford called the Bank, complained, and provided his contact information. Therefore, the Court is inclined to conclude that Stafford's KCPA claim is preempted and must be dismissed. The Court recognizes, however, that Stafford may be able to make a claim, based on the alleged facts, that the Bank acted unconscionably in verifying the identity of its applicants. Because the Bank has made this motion for summary judgment and the facts must be viewed in a light most favorable to Stafford, the Court will let this claim remain. However, to succeed Stafford may only use the KCPA to attack the Bank's acts in the period before it knew, or had reason to know the information it had in its possession was inaccurate. Otherwise, the claim must be dismissed.

**VI.**

 Last, the Bank argues that the Stafford's claim under the FDCPA must

---

**15.** Defendants rely significantly on this Court's opinion in *Kentucky Laborers Dist. Council v. Hill & Knowlton*, 24 F.Supp.2d 755, 772–73 (W.D.Ky.1998), for the rule that privity is required. In that case, two health and welfare trust funds that pay medical expenses incurred by those employed under various collective bargaining agreements sued eight major tobacco companies and certain tobacco-affiliated research and public relations firms. The plaintiffs attempted to recover under the KCPA on behalf of smokers who received payments from their funds. This court held the funds could not recover under KCPA because they lacked privity of contract. That case seems entirely different from this one. Here, the Defendant's entire defense appears to be that Plaintiffs were in privity. Moreover, Plaintiffs here—in contrast to the trust funds—falls precisely into the class protected by the KCPA.

be dismissed because the Bank is not a "debt collector" as required by the Act. As the Bank notes, the case law is well-settled on this point: a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts. *See, e.g., Zsamba v. Community Bank,* 63 F.Supp.2d 1294, 1299–1300 (D.Kan.1999); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 107 (6th Cir.1996); *Meads v. Citicorp Credit Services, Inc.,* 686 F.Supp. 330 (S.D.Ga.1988)(holding that banks were not debt collectors under the FDCPA). In their reply memorandum, Plaintiffs state they agree with the Bank on this point. The FDCPA claims are therefore dismissed.

The Court will enter an Order consistent with this Memorandum Opinion.

### ORDER

The Court has considered the pending motions for summary judgment. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is SUSTAINED IN PART and John Stafford's claims under the Fair Debt Collection Practices Act and state law claims for defamation and slander are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that, subject to the requirements set forth in the Memorandum, Plaintiff John Stafford's Fair Credit Reporting Act and Kentucky Consumer Protection Act claims are retained at this time.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment is DENIED as to John Stafford's claims under the Truth in Lending Act and state law claims for invasion of privacy and harassment.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment is SUSTAINED as to Julie Stafford's claims, except that for the harassment claim. As to the harassment claim, the motion is DENIED.