**Mark L. WOLFE, Plaintiff,**

v.

**MBNA AMERICA BANK, Defendant.**

No. 05–2972.

United States District Court,
W.D. Tennessee,
Western Division.

April 25, 2007.

Perry A. Craft, Tim W. Smith, Craft & Sheppard, PLC, Brentwood, TN, for Plaintiff.

Chad D. Graddy, Leo Maurice Bearman, Jr., Baker Donelson Bearman Caldwell & Berkowitz, Memphis, TN, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT

DONALD, District Judge.

Before the Court is Defendant MBNA America Bank's ("Defendant") Motion to Dismiss Plaintiff's Fourth Amended Com-

plaint (D.E.# 58) made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Mark Wolfe ("Plaintiff") filed his Fourth Amended Complaint on September 15, 2006, alleging a claim under the Tennessee Consumer Protection Act of 1977 ("TCPA"), Tenn.Code Ann. § 47–18–104(a)–(b), as well as claims for negligence, gross negligence, and defamation. Defendant asserts that dismissal is proper on the following grounds: (1) Defendant has no common law duty to verify the authenticity and accuracy of a credit account application before issuing a credit card; (2) Plaintiff's negligence, gross negligence, defamation, and TCPA claims, as they relate to the furnishing of information to credit reporting agencies, are preempted by § 1681h(e) and § 1681t(b)(1)(F) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 to 1681x; (3) Defendant's alleged conduct does not fall within the scope and purpose of the TCPA; and (4) Plaintiff is not entitled to an injunction because Plaintiff cannot establish a reasonable likelihood of success on the merits. Jurisdiction is proper under 28 U.S.C. § 1332. For the reasons stated herein, Defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part.

## I. FACTS[1]

Plaintiff, now a twenty-seven year old male, is a resident of the State of Tennessee. (Fourth Am. Compl. ¶ 1.) In or about April 2000, Defendant received a credit account application in Plaintiff's name from a telemarketing company. (*Id.* ¶¶ 5–7.) The application listed Plaintiff's address as 3557 Frankie Carolyn Drive, Apartment 4, Memphis, Tennessee 38118. (*Id.*) Plaintiff did not reside and had never resided at this address. (*Id.*)

---

1. The facts are taken from Plaintiff's Fourth Amended Complaint (D.E.# 54) and are pre-sumed to be true only for the purpose of this motion.

Upon receipt of the application, Defendant issued a credit card bearing Plaintiff's name to an unknown and unauthorized individual residing at the address listed on the application. (*Id.* ¶ 9.) Plaintiff alleges that Defendant, prior to issuing the card, did not attempt to verify whether the information contained in the credit account application was authentic and accurate. (*Id.* ¶¶ 9A–9D.) After receiving the card, the unknown and unauthorized individual charged $864.00 to the credit account, exceeding the account's $500.00 credit limit. (*Id.* ¶¶ 12–13.) When no payments were made on the account, Defendant, without investigating whether the account was obtained using a stolen identity, declared the account delinquent and transferred the account to NCO Financial Systems, Inc. ("NCO"), a debt collection agency. (*Id.* ¶¶ 15B–15C.) Defendant also notified various credit reporting agencies that the account was delinquent. (*Id.* ¶ 26.)

In order to collect the debt on the delinquent account, NCO hired an attorney, who discovered Plaintiff's actual address. (*Id.* ¶¶ 19–20.) The attorney, in a letter dated November 29, 2004, notified Plaintiff of the delinquent account and requested payment. (*Id.* ¶¶ 21–22.) Upon receipt of this letter, Plaintiff contacted the attorney to inquire about the account, but was told that he would receive information about the account in thirty (30) days. (*Id.* ¶ 24.) Plaintiff never received any further information. (*Id.* ¶ 25.)

In January 2005, Plaintiff applied for a job with a bank, but Plaintiff was not hired due to his poor credit score. (*Id.* ¶ 29.) Following this denial, Plaintiff contacted Defendant numerous times to dispute the delinquent account but was unable to obtain any "adequate or real explanation" from Defendant. (*Id.* ¶¶ 30–32.) At some point in time, Defendant mailed a notice of arbitration proceedings to the address listed on the credit account application, which subsequently resulted in an arbitration award against Plaintiff. (*Id.* ¶ 35.) Despite Plaintiff notifying Defendant that his identity was stolen, Defendant continues to list the credit account bearing Plaintiff's name as delinquent and has not corrected the information provided to credit reporting agencies regarding the account. (*Id.* ¶ 33.)

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim only tests whether the plaintiff has pleaded a cognizable claim. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988). Essentially, it allows the court to dismiss meritless cases which would otherwise waste judicial resources and result in unnecessary discovery. *See, e.g., Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

The Supreme Court has held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Neitzke,* 490 U.S. at 326–27, 109 S.Ct. 1827; *Lewis v. ACB Bus. Serv., Inc.,* 135 F.3d 389, 405 (6th Cir.1998). Thus, the standard to be applied when evaluating a motion to dismiss for failure to state a claim is very liberal in favor of the party opposing the motion. *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). Even if the plaintiff's chances of success are remote or unlikely, a motion to dismiss should be denied.

To determine whether a motion to dismiss should be granted, the court must first examine the complaint. The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P.

8(a). The complaint must provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. 99; *Westlake,* 537 F.2d at 858. The plaintiff, however, has an obligation to allege the essential material facts of the case. *Scheid,* 859 F.2d at 436–37.

In reviewing the complaint, the court must accept as true all factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983). Indeed, the facts as alleged by the plaintiff cannot be disbelieved by the court. *Neitzke,* 490 U.S. at 327, 109 S.Ct. 1827; *Murphy v. Sofamor Danek Group, Inc.,* 123 F.3d 394, 400 (6th Cir.1997). Where there are conflicting interpretations of the facts, they must be construed in the plaintiff's favor. *Sinay v. Lamson & Sessions Co.,* 948 F.2d 1037, 1039–40 (6th Cir.1991). However, legal conclusions or unwarranted factual inferences should not be accepted as true. *Lewis,* 135 F.3d at 405–06.

## III. DISCUSSION

As a preliminary matter, the Court notes that Defendant, in moving for dismissal of Plaintiff's TCPA, negligence, gross negligence and defamation claims, has also asserted that "Plaintiff's claim for an injunction should be dismissed because Plaintiff cannot establish a likelihood of success on the merits of this case, and also because the Fair Credit Reporting Act preempts injunctive relief based on state law." (Def.'s Mot. Dismiss Fourth Am. Compl. 2.) Although Plaintiff, in his Fourth Amended Complaint, does assert that he is entitled to "an immediate, temporary, or permanent injunction," (See Fourth Am. Compl. ¶ 69), Plaintiff has neither filed a motion seeking temporary injunctive relief nor specifically indicated what conduct he seeks to enjoin. Accordingly, Defendant's motion to dismiss as to Plaintiff's injunctive claim is **DENIED** without prejudice.

## A. Negligence and Gross Negligence Claims

In his Fourth Amended Complaint, Plaintiff asserts that Defendant was negligent and/or grossly negligent in two different factual contexts. First, Plaintiff alleges that Defendant had a *duty to verify* "the accuracy and authenticity of a credit application completed in Plaintiff's name before issuing a credit card." (Fourth Am. Compl. ¶¶ 49, 53A.) Second, Plaintiff alleges that Defendant had a *duty to investigate* "the accuracy and authenticity of a credit application completed in Plaintiff's name ... before transferring the account to NCO for collection, [and] before falsely reporting Plaintiff's delinquency to various credit reporting agencies." (*Id.* ¶ 49.) Plaintiff alleges that Defendant failed to comply with both duties, and thus, is negligent and/or grossly negligent.

In Tennessee, negligence is established if a plaintiff demonstrates: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounts to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause." *Leatherwood v. Wadley,* 121 S.W.3d 682, 693–94 (Tenn.Ct.App.2003) (citing *Bradshaw v. Daniel,* 854 S.W.2d 865, 869 (Tenn.1993)). To establish gross negligence, a plaintiff "must demonstrate ordinary negligence and must then prove that the defendant acted 'with utter unconcern for the safety of others, or ... with such reckless disregard for the rights of others that a conscious indifference to consequences is implied in law'...." *Menuskin v. Williams,* 145 F.3d 755, 766 (6th Cir.1998) (quoting *Odum v. Haynes,* 494 S.W.2d 795, 807 (Tenn.Ct.App.1972)).

Because Plaintiff's negligence and gross negligence claims differ substantially depending on the factual context in which the claims are alleged, the Court will analyze Defendant's arguments regarding the duty to verify and duty to investigate separately.

### i. Duty to Verify

█ Addressing the first context or duty, Defendant asserts that Plaintiff's negligence and gross negligence claims should be dismissed because Tennessee negligence law does not impose a duty on Defendant to verify the authenticity and accuracy of a credit account application prior to issuing a credit card. Defendant, characterizing Plaintiff's claim as one for the "negligent enablement of identity theft," argues that a duty to verify essentially constitutes a duty to prevent third-party criminal activity. Defendant argues that Tennessee courts have never held that commercial banks have a common law duty to prevent the theft of a non-customer's identity. Defendant further argues that it, like Plaintiff, is a victim of identity theft.

█ Under Tennessee negligence law, a duty is defined as "the legal obligation a defendant owes to a plaintiff to conform to the reasonable person standard of care in order to protect against unreasonable risks of harm." *Leatherwood,* 121 S.W.3d at 694 (citing *McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn.1995)). "Whether a defendant owes a duty to a plaintiff in any given situation is a question of law for the court." *Id.* (citing *Bradshaw v. Daniel,* 854 S.W.2d 865, 869 (Tenn.1993)). The "existence and scope of the duty of the defendant in a particular case rests on all the relevant circumstances, including the foreseeability of harm to the plaintiff and other similarly situated persons." *Id.* (citing *Pittman v. Upjohn Co.,* 890 S.W.2d 425, 433 (Tenn. 1994)). A harm is foreseeable "if a reasonable person could foresee the probability of its occurrence or if the person was on

notice that the likelihood of danger to the party to whom is owed a duty is probable." *Doe v. Linder Const. Co.,* 845 S.W.2d 173, 178 (Tenn.1992).

Because Tennessee courts have not specifically addressed whether Tennessee negligence law imposes a duty to verify on commercial banks, Defendant cites in support of its argument the Supreme Court of South Carolina's decision in *Huggins v. Citibank, N.A.,* 355 S.C. 329, 585 S.E.2d 275 (2003). In *Huggins,* the plaintiff alleged, among other things, that the defendant bank was negligent for issuing a credit card in the plaintiff's name to an unknown and unauthorized person "without any investigation, verification, or corroboration" of the authenticity and accuracy of the credit account application. *Id.* at 276. The defendant argued that under South Carolina negligence law, it had no duty to verify the accuracy and authenticity of the credit account application because plaintiff was technically a non-customer. *Id.* The South Carolina Supreme Court, despite finding that "it is foreseeable that injury may arise by the negligent issuance of a credit card," ultimately found that no duty to verify existed because "[t]he relationship, if any, between credit card issuers and potential victims of identity theft is far too attenuated to rise to the level of a duty between them." *Id.* at 277. Noting the similarity between negligence law in Tennessee and South Carolina, Defendant argues that its relationship with Plaintiff, like the parties in *Huggins,* was and is too attenuated to warrant the imposition of a duty to verify.

█ Upon review, the Court finds the South Carolina Supreme Court's conclusion in *Huggins* to be flawed. In reaching its conclusion, the *Huggins* court relied heavily on the fact that there was no prior business relationship between the parties, that is, the plaintiff was not a customer of

the defendant bank. The Court believes that the court's reliance on this fact is misplaced. While the existence of a prior business relationship might have some meaning in the context of a contractual dispute, a prior business relationship has little meaning in the context of negligence law. Instead, to determine whether a duty exists between parties, the Court must examine all relevant circumstances, with emphasis on the foreseeability of the alleged harm. As to the issue of foreseeability, the South Carolina Supreme Court found that "it is foreseeable that injury may arise by the negligent issuance of a credit card" and that such injury "could be prevented if credit card issuers carefully scrutinized credit card applications." *Id.* The Court agrees with and adopts these findings.

With the alarming increase in identity theft in recent years, commercial banks and credit card issuers have become the first, and often last, line of defense in preventing the devastating damage that identity theft inflicts. Because the injury resulting from the negligent issuance of a credit card is foreseeable and preventable, the Court finds that under Tennessee negligence law, Defendant has a duty to verify the authenticity and accuracy of a credit account application before issuing a credit card. The Court, however, emphasizes that this duty to verify does not impose upon Defendant a duty to prevent all identity theft. The Court recognizes that despite banks utilizing the most reasonable and vigilant verification methods, some criminals will still be able to obtain enough personal information to secure a credit card with a stolen identity. Rather, this duty to verify merely requires Defendant to implement reasonable and cost-effective verification methods that can prevent criminals, in some instances, from obtaining a credit card with a stolen identity. Whether Defendant complied with this duty before issuing a credit card in Plain-

tiff's name is an issue for the trier of fact. Accordingly, Defendant's motion to dismiss Plaintiff's negligence and gross negligence claims in the first factual context is **DENIED.**

### ii. Duty to Investigate

■ Addressing the second context or duty, Defendant asserts that Plaintiff's negligence and gross negligence claims relating to Defendant's alleged failure to investigate the authenticity of the credit account prior to declaring the account delinquent and reporting that delinquency to various credit reporting agencies should be dismissed. Specifically, Defendant argues that any and all state law claims relating to Defendant's role as a furnisher of information to credit reporting agencies are preempted by § 1681h(e) and § 1681t(b)(1)(F) of the FCRA.

The purpose of the FCRA is to promote "efficiency in the Nation's banking system and to protect consumer privacy." 15 U.S.C. § 1681(a); *see Stafford v. Cross Country Bank,* 262 F.Supp.2d 776,' 781 (W.D.Ky.2003) (stating that the FCRA "protect[s] the needs of commerce and facilitate[s] the dispersion of credit information while, at the same time, requiring accuracy and confidentiality"). To effectuate this purpose, the FCRA allows for two types of individual claims: (1) claims made pursuant to the FCRA itself under § 1681s–2(b) and (2) state law claims relating to the furnishing of information to credit reporting agencies that do not fall within the scope of the FCRA's two preemption provisions, § 1681h(e) and § 1681t(b)(1)(F). *Stafford,* 262 F.Supp.2d at 782. Plaintiff has not alleged any claims under § 1681s–2(b). Thus, the Court need only discuss the potential preemption of Plaintiff's state law claims under § 1681h(e) and § 1681t(b)(1)(F).

Section 1681h(e), which was included in the original enactment of the FCRA, states in pertinent part, "No consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to ... any person who furnishes information to a consumer reporting agency, ... except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e) (2000). In 1996, Congress amended the FCRA and added § 1681t(b)(1)(F), which states in pertinent part, "No requirement or prohibition may be imposed under the laws of any State ... with respect to any *subject matter regulated under ... section 1681s–2* of [the FCRA], relating to the responsibilities of persons who furnish information to consumer reporting agencies...." 15 U.S.C. § 1681t(b)(1)(F) (2000) (emphasis added). Section 1681s–2 imposes duties on furnishers to provide accurate information to credit reporting agencies, *see* § 1681s–2(a), and to investigate and correct any inaccurate information provided to credit reporting agencies after receiving notice of dispute, *see* § 1681s–2(b).

The 1996 amendments to the FCRA, and § 1681t(b)(1)(F) itself, do not make any reference to § 1681h(e), despite the overlapping and potentially contradictory language of both provisions. The resulting tension between these two provisions, as well as the various district court attempts to harmonize them have, resulted in four distinct and conflicting interpretive approaches. The Court notes that no circuit court has reviewed or adopted any of these interpretive approaches. *See Stafford,* 262 F.Supp.2d at 784. Thus, before the Court can determine whether Plaintiff's negligence and gross negligence claims as they relate to the furnishing of credit information are preempted by the FCRA, the Court must determine which interpretive approach to adopt.

The first and most sweeping interpretive approach was adopted by the Eastern District Court of Pennsylvania in the case *Jaramillo v. Experian Info. Solutions, Inc.,* 155 F.Supp.2d 356 (E.D.Pa.2001). In *Jaramillo,* the district court held that the 1996 amendments to the FCRA, as well as the apparent broad language of § 1681t(b)(1)(F), demonstrated Congress's intent to repeal § 1681h(e) and thus, preempt *all* state causes of action relating to the furnishing of credit information. *Id.* at 361–62. The district court held that because § 1681t(b)(1)(F) "preempts 'any subject matter regulated under ... section 1681s–2'—which addresses the responsibilities of furnishers of credit information— Congress intended to preempt all state law claims that bear any connection to furnishers of credit information." *Stafford,* 262 F.Supp.2d at 785 (citing *Jaramillo,* 155 F.Supp.2d at 361–62.)

The Court, however, finds this sweeping approach flawed—a conclusion the court in the Eastern District of Pennsylvania reached itself in the subsequent case *DiPrinzio v. MBNA Am. Bank,* No. 04–872, 2005 WL 2039175 (E.D.Pa. Aug. 24, 2005), in which it held that "[t]o presume that Congress wished to repeal an existing provision without clearly saying so would be an awkward act of law-making that this Court should not and shall not undertake." *Id.* at *5 (citing *TRW, Inc. v. Andrews,* 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) ("[I]t is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.")). Historically, the Supreme Court has disfavored implied repeals of statutory text. *See, e.g., Tenn. Valley Auth. v. Hill,* 437 U.S. 153, 190, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978) ("In the absence of some affirmative showing of an intention to repeal, the only permissible justification

for a repeal by implication is when the earlier and later statutes are irreconcilable"). Therefore, because neither § 1681t(b)(1)(F) or the 1996 amendments to the FCRA expressly repeal § 1681h(e), the Court must assume that Congress intended both provisions to remain active. Accordingly, the Court refuses to adopt the sweeping approach.

The second interpretive approach, which is known as the "temporal approach," was adopted by the Western District Court of Kentucky in *Stafford v. Cross Country Bank*, 262 F.Supp.2d 776 (W.D.Ky.2003). In *Stafford*, the district court, noting that § 1681t(b)(F)(1) only preempts those claims relating to subject matter regulated under § 1681s–2, interpreted § 1681s–2 as "only implicat[ing] conduct occurring *after* the [furnisher] knew it possessed inaccurate information, or consciously avoided such knowledge." *Id.* at 787 (emphasis added).[2] In other words, the district court concluded that preemption under § 1681t(b)(1)(F) is only triggered when the state law claim relates to conduct that occurred *after* the furnisher received notice of a dispute as to the accuracy of the information.

Based on this temporal interpretation of § 1681t(b)(1)(F), the district court then concluded that § 1681h(e) only preempts state law claims relating to conduct that occurred *before* a furnisher received notice of dispute *unless* the claim alleges that "the [furnisher] acted maliciously or with a willful intent to injure." *Id.; see* 15 U.S.C. § 1681h(e). But despite this interpretation, the court concluded that even if a state law claim that relates to the furnishing of credit information avoids preemption under § 1681h(e) by alleging the required mens rea, that is, malice or willful intent, the claim is ultimately preempted under § 1681t(b)(1)(F):

> Under § 1681h(e)'s qualified immunity standard, [the plaintiff] may only pursue these [state law] claims if he can prove the Bank acted maliciously or with a willful intent to injure [plaintiff]. The FCRA does not define the term willfull, but courts have interpreted it as requiring a showing that the defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others." Regardless, [the plaintiffs'] success in overcoming this hurdle is immaterial. Even if [plaintiff] met the higher standard to pursue the [state law] claims, those claims would, nevertheless, be preempted by § 1681t(b)(1)(F). This is because § 1681s–2 regulates the furnishing of information if done knowingly or if the furnisher "consciously avoids knowing that the information is inaccurate." In other words, the remaining parts of the [state law] claims would then involve a

**2.** The district bases its interpretation of § 1681s–2 solely on subsection (b), which imposes duties on furnishers of information to investigate and correct any inaccurate information after receiving notice of a dispute. *See* 15 U.S.C. § 1681s–2(b) (2000). The district court does not specifically indicate why its interpretation of § 1681s–2 is limited to subsection (b) and ignores subsection (a), which imposes duties on furnishers of information to provide accurate information to credit reporting agencies *regardless of whether the furnisher has been notified* of a dispute. *See* 15 U.S.C. § 1681s–2(a) (2000). This Court can only guess that the district court's decision to ignore subsection (a) was based on the fact that subsection (a) can only be enforced by government agencies and officials. *See* 15 U.S.C. § 1681s–2(c)(1), (d) (such violations "shall be enforced exclusively as provided under section 1681s of this title by the Federal agencies and officials and the State officials identified in section 1681s of this title"). In contrast, subsection (b) provides for a private right of action. *See Downs v. Clayton Homes, Inc.*, 88 Fed.Appx. 851, 853–54 (6th Cir.2004) (assuming that a private right of action exists under subsection (b)).

subject-matter regulated under § 1681–s2, which § 1681t(b)(1)(F) preempts. *Id.* at 788–89 (citations omitted) (footnote omitted).

Upon review, the court finds the temporal approach to be circular and flawed. Although the Court agrees with the *Stafford* court's conclusion that § 1681s–2 implicates a furnisher's conduct *after* the furnisher has received notice of a dispute, *see* § 1681s–2(b), the Court notes that § 1681s–2 also implicates a furnisher's conduct *before* the furnisher has received notice of a dispute, *see* § 1681s–2(a). The Court finds no reasonable basis for ignoring subsection (a) of 1681s–2, and thus limiting § 1681t(b)(1)(F)'s preemptive scope only to state law claims that relate to conduct that occurred *after* a furnisher received notice of a dispute. Moreover, the Court finds the temporal approach's purported preservation of § 1681h(e) to be disingenuous since any claim relating to the furnishing of credit information that avoids preemption under § 1681h(e) will ultimately be preempted by § 1681t(b)(1)(F). Accordingly, the Court refuses to adopt the temporal approach.

The third interpretive approach, which is advocated by Defendant, was adopted by the Middle District Court of Tennessee in *Westbrooks v. Fifth Third Bank,* No. 3:05–0664, 2005 WL 3240614 (M.D.Tenn. Nov. 30, 2005). In *Westbrooks,* the district court, stating that "the two provisions must be read consistently, giving effect to both the old § 1681h(e) and the new § 1681t(b)(1)(F)," articulated the following approach: "All state law claims that do not allege willfulness are preempted by § 1681h(e), and any surviving claims alleging willfulness are preempted under § 1681t(b)(1)(F) if they involve a subject-matter regulated under § 1681s–2." *Id.* at *6 (citing *TRW Inc. v. Andrews,* 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001)).

Applying this approach, the court determined that the plaintiff's TCPA claim avoided preemption under § 1681h(e) because plaintiff had alleged that the defendant bank had "negligently or willfully committed unfair and deceptive acts." However, the court ultimately concluded that plaintiff's TCPA claim was "preempted by § 1681t(b)(1)(F) because the allegations pertain to a subject matter regulated by § 1681s–2—that is, the furnishing of information to a consumer reporting agency." *Id.* The court also found that plaintiff's defamation claim was preempted by § 1681t(b)(1)(F) because it "pertains to subject matter regulated under § 1681s–2." *Id.* at *7.

Although the *Westbrooks* approach achieves a better substantive harmony between § 1681h(e) and § 1681t(b)(1)(F) than either the sweeping or temporal approach, the *Westbrooks* approach conflicts with the plain and narrow language of § 1681h(e). Section 1681h(e) states that "no consumer may bring any action or proceeding *in the nature of defamation, invasion of privacy, or negligence. ...*" 15 U.S.C. § 1681h(e) (2000) (emphasis added). This language suggests that § 1681h(e) only applies to state law claims that can be classified as "torts," that is, common law claims that are in the nature of defamation, invasion of privacy, or negligence. In the *Westbrooks* approach, however, § 1681h(e) applies to "all" state law claims, including statutory claims. Because this broad interpretation directly conflicts with the language of § 1681h(e), the Court refuses to adopt the *Westbrooks* approach.

The fourth and final interpretive approach, which is known as the "statutory approach," was adopted by the Northern District Court of Alabama in *McCloud v. Homeside Lending,* 309 F.Supp.2d 1335, 1341 (N.D.Ala.2004). In *McCloud,* the dis-

trict court, noting that § 1681h(e) expressly limits itself to state law claims "in the nature of defamation, invasion of privacy, or negligence," concluded that § 1681h(e) only preempts state law *tort* claims that fail to allege malice or willful intent to injure. *Id.; see* 15 U.S.C. § 1681h(e) (2000). Turning to § 1681t(b)(1)(F), the court concluded that § 1681t(b)(1)(F), although facially broad, only preempts state law *statutory* claims that relate to the furnishing of credit information. The Court based this narrow interpretation on the fact that § 1681t(b)(1)(F) specifically exempts from its coverage two state statutory laws in Massachusetts and California that specifically relate to credit reporting. *Id.; see* 15 U.S.C. § 1681t(b)(1)(F)(i)-(ii) (2000).[3] The court also based its interpretation on § 1681t(b)(1)(F)'s status as a general preemption provision:

> Yet, another rationalization for the conclusion that § 1681t(b)(1)(F) cannot preempt all state law claims, including state common law tort claims, is that this section is a general preemption provision. In contrast, § 1681h(e) contains a more specific preemption clause (*i.e.* "Any action or proceeding in the nature of defamation, invasion of privacy, or negligence"). When a specific statute carves out an exception to a general

statute, the "specific statute will not be controlled or nullified by [the] general one, regardless of the priority of enactment."

*Id.* (quoting *Morton v. Mancari,* 417 U.S. 535, 550–51, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974)) (emphasis in original) (alteration in original). Thus, the court ultimately held that "§ 1681h(e) applies only to torts, while § 1681t(b)(1)(F) applies only to state statutory regulation of credit reporting practices and procedures." *Id.* at 1341 (citing *Carlson v. Trans Union, LLC,* 259 F.Supp.2d 517, 521 (N.D.Tex.2003)).[4]

Upon review, the Court finds that the statutory approach provides the best substantive and practical interpretation of § 1681h(e) and § 1681t(b)(1)(F)—an interpretation that has found support in numerous district court decisions. *See, e.g., Di-Prinzio,* 2005 WL 2039175, at *6 ("Read alone, section 1681h(e) strongly suggests application only to state common law torts. When read alongside section 1681t(b)(1)(F) however, the symmetry is clear: section 1681h(e) applies to state common law and section 1681t(b)(1)(F) applies to state statutes.") Accordingly, the Court adopts the statutory approach and holds that any and all state common law *tort* claims relating to the furnishing of credit information

---

**3.** Section 1681t(b)(1)(F) specifically excludes from its coverage "section 54(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996)" and "section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996)."

**4.** In *Nelski v. Ameritech,* No. 244644, 2004 WL 1460001 (Mich.Ct.App. June 29, 2004), the Michigan Court of Appeals also found support for limiting the preemptive scope of § 1681t(b)(1)(F) to state statutory claims in the surrounding subsections of § 1681t:

> The conclusion that § 1681t(b)(1)(F) only applies to state statutory laws is buttressed by the fact that § 1681t(d)(2) provides that subsection[ ](b) does not apply "to *any provision of State law* (including any provision

of a State constitution) that—(A) is *enacted* after January 1, 2004; (B) states explicitly that the provision is intended to supplement this subchapter; and (c) gives greater protection to consumers than is provided under this subchapter." (Emphasis added). Furthermore, § 1681t(a) explicitly states that "this subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter *from complying with the law of any State.* ..." Based on the clear language of § 1681t(a) and § 1681t(b)(1)(F), this Court holds that § 1681t(b)(1)(F) only preempts causes of actions relating to the subject-matter of § 1681s–2 brought pursuant to state statutory laws.

*Id.* at *6 (emphasis in original).

should be analyzed under § 1681h(e) and any and all state *statutory* claims relating to the furnishing of credit information should be analyzed under § 1681t(b)(1)(F). With this approach in place, the Court will now analyze Plaintiff's negligence and gross negligence claims as they relate to the furnishing of credit information under § 1681h(e).

 As previously noted, § 1681h(e) preempts any state common law tort claim "with respect to . . . any person who furnishes information to a consumer reporting agency" *unless* the claim alleges that the furnisher acted "with *malice or willful intent to injure.*" 15 U.S.C. § 1681h(e) (2000) (emphasis added). Section 1681h(e) does not define "malice," but most courts applying § 1681h(e) have adopted the meaning of the term in a defamation context. Thus, information is furnished with malice when the furnisher "either knows [the information] is false or . . . the [furnisher] acts in reckless disregard of its truth or falsity." *DiPrinzio,* 2005 WL 2039175, at *5; *see also New York Times Co. v. Sullivan,* 376 U.S. 254, 280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (defining actual malice in a defamation context as making a statement "with knowledge that it was false or with reckless disregard of whether it was false or not"). Section 1681h(e) also fails to define "willful intent to injure," but most courts applying § 1681h(e) have defined it "as requiring a showing that the defendant 'knowingly and intentionally committed an act in conscious disregard for the rights of others.'" *Stafford,* 262 F.Supp.2d at 788.

 Plaintiff has alleged that Defendant was negligent and grossly negligent for failing to investigate whether Plaintiff was the actual owner of the credit account before declaring the account delinquent and reporting the delinquency to various credit reporting agencies. Plaintiff's negligence claims, however, demonstrate the paradoxical nature of § 1681h(e). Although the language of § 1681h(e) suggests that a negligence claim can allege the required mens rea, and thus, avoid preemption, the Court notes that a negligence claim, by its very nature, can never be intentional, that is, malicious or willful. *See Carlson v. Trans Union, LLC,* 259 F.Supp.2d 517, 521 n. 1 (N.D.Tex.2003) ("[W]here there is a requirement of 'malice or willful intent to injure' there is no cause of action for negligence. Negligence claims are preempted by § 1681h(e)."); *Bryan v. Paramount Packaging Corp.,* 677 S.W.2d 453, 454 (Tenn.1984) ("We have said that willful misconduct . . . means something more than mere negligence and carries the idea of deliberation and intentional wrongdoing."); *Garrett v. Greene,* 1988 WL 115709, at *3 (Tenn.Ct.App. Oct. 31, 1988) ("Inadvertence is the hallmark of a negligence case. An assault done with willful, malicious, avaricious intent to injure a party by fraud is not a negligent act."). Therefore, despite alleging the required mens rea under § 1681h(e), Plaintiff's negligence and gross negligence claims in the second factual context must be dismissed. Accordingly, Defendant's motion to dismiss Plaintiff's negligence and gross negligence claims in the second factual context is **GRANTED.**

### B. Libel Claim

In his Fourth Amended Complaint, Plaintiff asserts that Defendant "acted recklessly or [was] negligent in failing to determine if the statement[s] [about Plaintiff and the credit account bearing Plaintiff's name were] true before communicating" them to NCO and other various credit reporting agencies. (Fourth Am. Compl. ¶¶ 55–56, 62–63). In contrast, Defendant asserts that Plaintiff's libel claim relates to Defendant's role as a furnisher of credit information, and thus, Plaintiff's claim is preempted by § 1681h(e) and § 1681t(b)(1)(F) of the FCRA. In analyz-

ing claims under § 1681h(e) and § 1681t(b)(1)(F), the Court has adopted the statutory interpretive approach, which holds that any and all state common law *tort* claims relating to the furnishing of credit information should be analyzed under § 1681h(e) and any and all state *statutory* claims relating to the furnishing of credit information should be analyzed under § 1681t(b)(1)(F). *See McCloud v. Homeside Lending*, 309 F.Supp.2d 1335 (N.D.Ala.2004) (discussing and adopting the statutory approach). Thus, Plaintiff's state common law tort claim for libel will be analyzed under § 1681h(e).

 Section 1681h(e) preempts any state common law tort claim "with respect to ... any person who furnishes information to a consumer reporting agency" *unless* the claim alleges that the furnisher acted "with *malice or willful intent to injure.*" 15 U.S.C. § 1681h(e) (2000) (emphasis added). Section 1681h(e) does not define "malice," but most courts applying § 1681h(e) have adopted the meaning of the term in a defamation context. Thus, information is furnished with malice when the furnisher "either knows [the information] is false or ... the [furnisher] acts in reckless disregard of its truth or falsity." *DiPrinzio v. MBNA Am. Bank*, No. 04–872, 2005 WL 2039175, at *5 (E.D.Pa. Aug. 24, 2005); *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 280, 84 S.Ct. 710,

11 L.Ed.2d 686 (1964) (defining actual malice in a defamation context as making a statement "with knowledge that it was false or with reckless disregard of whether it was false or not"). Section 1681h(e) also does not define "willful intent to injure," but most courts applying § 1681h(e) have defined it "as requiring a showing that the defendant 'knowingly and intentionally committed an act in conscious disregard for the rights of others.'" *Stafford v. Cross Country Bank*, 262 F.Supp.2d 776, 788 (W.D.Ky.2003).

 To establish a claim for libel in Tennessee, a plaintiff who is a private individual need only demonstrate that: (1) a statement is defamatory; (2) that the defamatory statement was published to a third party; (3) that the publication of that defamatory statement injured the plaintiff's reputation; and (3) that the defamatory statement does not relate to a matter of public concern. *Memphis. Pub. Co. v. Nichols*, 569 S.W.2d 412, 420 (Tenn. 1978). If the plaintiff is a private individual and the alleged defamatory statement relates only to a matter of private concern, the plaintiff is not required to demonstrate that the alleged defamatory statement was false or that the statement was made with "actual malice," that is "with knowledge that it was false or with reckless disregard of whether it was false or not."[5] *See Sullivan*, 376 U.S. at 279,

---

**5.** In *New York Times v. Sullivan*, the Supreme Court, noting that "freedom of expression upon public questions is secured by the First Amendment," held that a *public official* cannot recover damages for a defamatory statement unless he or she proves that the false statement was made with " 'actual malice'— that is, with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S. 254, 280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (emphasis added). In subsequent cases, the Court extended this "actual malice" requirement to libels of public figures, *see Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094

(1967), and defamatory statements about public and private figures that involved a "matter of public or general interest," *see Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971).

In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the Court found that private persons are not required to establish the Sullivan "actual malice" standard if the defamatory statement concerns a private matter. *Id.* at 343–345, 94 S.Ct. 2997. Rather, the Court held that because "private persons have not voluntarily exposed themselves to increased risk of injury from defamatory statements and because they

84 S.Ct. 710; *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 347, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) (holding that "the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehoods injurious to a private individual"). Instead, a private plaintiff need only demonstrate that the defamatory statement was negligently made, that is, that the defendant failed to exercise "reasonable care and caution in checking on the truth or falsity and the defamatory character of the communication before publishing it." *Nichols,* 569 S.W.2d at 419.

In the present case, because Plaintiff is a private figure and the alleged defamatory statements relate only to matters of private concern, Plaintiff is only required to demonstrate that Defendant negligently communicated the alleged defamatory statements. However, because Plaintiff's libel claim relates to Defendant's role as a furnisher of credit information, Plaintiff is required under § 1681h(e) to allege and demonstrate that Defendant maliciously or willfully communicated defamatory statements about Plaintiff in order to avoid preemption.

 In his Fourth Amended Complaint, Plaintiff does not allege that Defendant willfully published defamatory statements about Plaintiff, but Plaintiff does allege that Defendant "acted *recklessly* . . . in failing to determine if the statement[s] were true before communicating [them] to others." (Fourth Am. Compl. ¶¶ 62, 62A) (emphasis added). Based on this allegation, the Court finds that Plaintiff has successfully pled that Defendant maliciously communicated defamatory statements about Plaintiff to NCO and various credit reporting agencies, and thus, has satisfied § 1681h(e)'s heightened mens rea requirement. Accordingly, Defendant's motion to dismiss as to Plaintiff's libel claim is **DENIED.**

## C. TCPA Claim

In his Fourth Amended Complaint, Plaintiff alleges that he suffered "an ascertainable loss of property, money or thing of value" due to Defendant's unfair or deceptive acts or practices. (Fourth Am. Compl. ¶ 44.) Specifically, Plaintiff alleges that Defendant violated the TCPA by

extending credit to an individual or entity in Plaintiff's name, allowing said individual or entity to "run-up" credit card purchases, not verifying the veracity of any credit application, falsely reporting Plaintiff to others including credit reporting agencies and damaging Plaintiff's name[,] . . . reputation, and marketability due to false credit reports, ignoring Plaintiff's requests and entreaties to remedy the problem, and then not remedying the problems and ignoring his requests while Plaintiff continued and continues to suffer and sustain ascertainable losses.

(*Id.* ¶ 45.)

 Defendant initially asserts that Plaintiff's TCPA claim should be dismissed because Plaintiff was neither a buyer or a seller of any consumer good or service provided by Defendant. The TCPA defines "consumer" as "any natural person who seeks or acquires by purchase, rent,

generally lack effective opportunities for rebutting such statements, . . . the State possessed a 'strong and legitimate . . . interest in compensating private individuals for injury to reputation.'" *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 756, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985) (quoting *Gertz,* 418 U.S. at 348–49, 94 S.Ct. 2997).

Thus, the Court held that if defamatory statements were made about a private individual and related only to a private matter, that private individual need not demonstrate "actual malice" to recover actual and punitive damages. *Greenmoss,* 472 U.S. at 760, 105 S.Ct. 2939; *Gertz,* 418 U.S. at 348–49, 94 S.Ct. 2997.

lease, assignment, award by chance, or other disposition, any goods, services, or property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated." Tenn.Code Ann. § 47–18–103(2) (2006). Based on this definition, the Court finds that Plaintiff was a "consumer" as defined under the TCPA. Although Plaintiff did not seek or acquire from Defendant the credit account bearing his name, the credit account was obtained with Plaintiff's identity. Moreover, Defendant, who claims to have been unaware that Plaintiff was not the true owner of the credit account, acted as though Plaintiff was the actual owner of the account. To now argue that Plaintiff is not a consumer as defined by the TCPA because the credit account was obtained using Plaintiff's identity, rather than by Plaintiff himself, is unpersuasive. The Court will not distinguish Plaintiff's person from his identity since both, in the Court's view, are the same.

■ Defendant also asserts that Plaintiff's TCPA claim should be dismissed on the basis that Defendant's issuance of a credit account bearing Plaintiff's name to an unknown and unauthorized individual does not constitute an unfair or deceptive act or practice. The TCPA does not define "unfair" or "deceptive," but the TCPA does provide a non-exclusive list of certain acts or practices that automatically qualify as unfair or deceptive. *See* Tenn.Code Ann. 47–18–104(b). If a particular act or practice is not contained within this non-exclusive list, "the definition[s] of [unfair and deceptive] are left to the courts on a case by case basis." *Ganzevoort v. Russell,* 949 S.W.2d 293, 300 (Tenn.1997) (citing Jeffrey L. Reed, *The Tennessee Consumer Protection Act: An Overview,* 58 Tenn. L.Rev. 455, 460 (1991)).

Plaintiff has alleged that Defendant, via a telemarketer, solicited, approved, and issued a credit account in Plaintiff's name to an unknown and unauthorized individual without verifying the accuracy and authenticity of the credit account application. Plaintiff has further alleged that even when Defendant received no payments on the account, Defendant failed to investigate whether Plaintiff was the true owner of the account before declaring the account delinquent, reporting that delinquency to various credit reporting agencies, and turning over the delinquent account to debt collection agency. While these alleged acts or practices are not specifically contained within the TCPA's non-exclusive list of unfair and deceptive acts, the Court finds that Defendant's alleged failure to act, despite being aware of the serious consequences identity theft can inflict on an individual's life, clearly falls within the scope of "unfair" acts or practices under the TCPA.

■ Next, Defendant asserts that Plaintiff's TCPA claim should be dismissed on the basis that the Tennessee legislature never intended the TCPA to impose liability on commercial banks for failing to prevent identity theft. In support of this assertion, Defendant cites the Tennessee Identity Theft Deterrence Act of 1999 ("Deterrence Act"), Tenn.Code Ann. §§ 47–18–2101 to 2107—a recent amendment to the TCPA. *See* Tenn.Code Ann. § 47–18–2106 ("For the purpose of application of the Tennessee Consumer Protection Act, ... any violation of the provisions of this part shall be construed to constitute an unfair or deceptive act or practice affecting trade or commerce....")

Under the Deterrence Act, a business can be held liable for the theft of a customer's identity if, and only if, the customer's identity was obtained through a breach of the business's security system and the business subsequently failed to notify the customer of the breach. Tenn.Code Ann.

§ 47–18–2107(b)–(d). Citing this liability-limiting language, Defendant asserts that the Tennessee legislature's decision not to impose liability on businesses for solely failing to prevent a customer's or non-customer's identity from being stolen is evidence of the legislature's intent not to hold businesses or banks liable under the TCPA for solely failing to prevent identity theft.

Upon review, the Court is unpersuaded that the Deterrence Act's language, or lack thereof, is definitive evidence of the Tennessee legislature's intent to prevent businesses and commercial banks from being held liable under the TCPA where recklessness or indifference enabled or perpetuated the identity theft. As Plaintiff notes, the Deterrence Act, while not expressly imposing liability on businesses or banks for solely failing to prevent identity theft, also does not expressly immunize businesses or banks from civil suits under the TCPA for failing to prevent or minimize the harm resulting from identity theft. (Pl's Resp. Opp'n Def.'s Mot. Dismiss 15.) Accordingly, the Court finds that Plaintiff's claim does not conflict with the TCPA or the Deterrence Act.

▮ Finally, Defendant asserts that Plaintiff's TCPA relates to the furnishing of credit information, and thus, is preempted by § 1681h(e) and § 1681t(b)(1)(F) of the FCRA. In analyzing claims under § 1681h(e) and § 1681t(b)(1)(F), the Court has adopted the statutory interpretive approach, which holds that any and all state common law *tort* claims relating to the furnishing of credit information should be analyzed under § 1681h(e) and any and all state *statutory* claims relating to the furnishing of credit information should be analyzed under § 1681t(b)(1)(F). *See McCloud v. Homeside Lending*, 309 F.Supp.2d 1335 (N.D.Ala.2004) (discussing and adopting the statutory approach).

Thus, Plaintiff's TCPA claim will be analyzed under § 1681t(b)(1)(F).

▮ Section 1681t(b)(1)(F) states that "[n]o requirement or prohibition may be imposed under the laws of any State ... *with respect to any subject matter regulated under ... section 1681s–2 of this title*, relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F) (2000) (emphasis added). Section 1681s–2 imposes duties on furnishers of credit information to provide accurate information to credit reporting agencies, *see* § 1681s–2(a), and to investigate and correct inaccurate information upon receiving notice of a dispute, *see* § 1681s–2(b). Thus, any state statutory provision that directly imposes a requirement or prohibition on the furnishing of credit information is preempted by § 1681t(b)(1)(F).

Applying § 1681t(b)(1)(F), the Court finds that Plaintiff's TCPA claim as it relates to the furnishing of credit information does not fall within the preemptive scope of § 1681t(b)(1)(F). Although the TCPA is a state statute and Plaintiff's TCPA claim relates to a subject matter regulated by § 1681s–2, the Court finds that the TCPA was not intended to impose, nor does it directly impose, any express requirements or prohibitions on the furnishing of credit information. The Court notes that this is in direct contrast with the credit reporting laws in Massachusetts and California that are expressly exempted from preemption under § 1681t(b)(1)(F). Unlike the TCPA, the Massachusetts and California statutory provisions directly address and regulate the furnishing of credit information to credit reporting agencies. *See* Cal. Civ. Code § 1785.25(a) ("A person shall not furnish information on a specific transaction or experience to any consumer credit re-

porting agency if the person knows or should know the information is incomplete or inaccurate."); Mass. Ann. Laws ch. 93, § 54A(a) ("Every person who furnishes information to a consumer reporting agency shall follow reasonable procedures to ensure that the information reported to a consumer reporting agency is accurate and complete."). Thus, based on these exemptions, the Court can discern that Congress intended only to preempt those state statutes that directly impose additional requirements or prohibitions on the furnishing of credit information—not statutes or claims that indirectly impact the furnishing of credit information. To interpret § 1681t(b)(1)(f) otherwise would provide broad protection to credit companies and reduce the protection afforded to consumers—a result that directly contradicts the purpose of the FCRA. Accordingly, Defendant's motion to dismiss as to Plaintiff's TCPA claim is **DENIED.**

## IV. CONCLUSION

For the aforementioned reasons, Defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**